RAFF, ET VIR *v.* ACME MARKETS, INC., ET AL.

[No. 576, September Term, 1966.]

Decided *October 11, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, OPPENHEIMER, McWILLIAMS, and FINAN, JJ., and
CLAPP, J., Associate Judge of the Sixth Judicial Circuit, spe-
cially assigned.

*Paul M. Nussbaum*, with whom were *Josef B. Brown* and
*Reichelt, Nussbaum & Brown* on the brief, for appellants.

*Thomas A. Farrington*, with whom were *Hal C. B. Clagett*
and *Sasscer, Clagett, Powers & Channing* on the brief, for ap-
pellees.

McWILLIAMS, J., delivered the opinion of the Court.

New Year's Day, 1963, was cold. At Washington National
Airport the temperature did not rise above 27. Five inches
of snow lay on the ground. On Wednesday, the 2nd, the ther-
mometer went no higher than 33. Thursday's maximum was
36, Friday's was 38. On Saturday the temperature ranged from
a low of 21 to a high of 38. The snow on the ground had shrunk
to 3 inches. Neither rain nor snow had fallen at the Airport
during the 5 day period.

Ten miles to the north of the airport, near Hyattsville, in
Prince George's County, is the Kent Village Shopping Center.
One of its lessees is Acme Markets, Inc.[1] At about 1:00 P.M.
on Saturday the Raffs (appellants) entered Acme's parking lot.
In the car with them was Edward Morse, Mrs. Raff's brother.
Raff parked on the far side of the lot about 70 feet from the
entrance to Acme's store. Mrs. Raff, who was 46 at the time,
left to do the shopping. The two men remained in the car.

As she walked across the parking lot to the store she noticed

---

1. The appellees, Acme Markets, Inc. and Kent Village Shopping
Center, Inc., by reason of existing agreements will be treated as
a single party and will be designated herein as "Acme."

there "was lots of ice and snow and ruts from the car wheels" and she said she had to "take [her] time and step over them and be careful." It was "very cold" and although there had been no snowfall that day she "thought it [had] snowed flurries the night before."

When she came out of the store about an hour later she was pushing ahead of her four bags of groceries in one of the wheeled wire baskets provided by Acme. After she came to the "end of the sidewalk" she had taken "about three steps on the ramp," holding on to the basket, when "all of a sudden * * * [her] feet went out from under * * * [her] and the basket went out in the parking lot * * *."

The "sidewalk" mentioned by Mrs. Raff is actually a part of Acme's store. It is an exterior masonry platform, over which there is a canopy. The "sidewalk" and the main floor of the store are on the same level. A number of masonry platforms, each about 8 by 15 feet, extend from the "sidewalk" out into the parking lot. Although the witnesses called them ramps, they are level with the sidewalk and inclined only at the outer ends. She intended, she said, to leave the basket on the ramp and have her husband bring the car alongside so that he could put the bags of groceries into the car. This was her usual practice, she testified.

There was neither ice nor snow on the sidewalk but there was snow on the ramp. Asked why she didn't "go on down a little further and off the sidewalk" she said she "figured the ramp would be the safer of the two * * *." After she fell she learned that there was ice under the snow.

Raff corroborated his wife's testimony that the parking lot was "full of ice and ruts." He saw his wife in his rear view mirror just as she fell. He and Morse hurried to her side. The surface of the ramp was smooth, he said, and covered with "powdery snow." Where the snow was pushed away by her fall he saw ice.

Morse testified he saw no ruts on the ramp nor any footsteps except where Mrs. Raff fell. He said there was ice under the snow.

The case was tried on 3 October 1966 before Loveless, J. and a jury. At the conclusion of the plaintiffs' case the court di-

rected a verdict for the defendants. Acme contends, as the trial judge seems to have found, that there was no evidence of primary negligence and that even if there had been, Mrs. Raff was guilty of contributory negligence as a matter of law. In these circumstances we are required to consider the evidence (including the official weather data) and all logical and reasonable inferences deducible therefrom in a light most favorable to the appellants.

I.

Acme insists there is no evidence to support a finding that it knew or by the exercise of reasonable care could have known of the hazardous condition of the ramp. "It would be pure speculation," Acme argues, "to suggest that this condition existed for such a length of time that * * * [Acme] would have had an opportunity to observe and remedy the condition * * *" or to suggest that it should have anticipated that business invitees would fail to discover the hazard and to protect themselves against it. We do not see it quite that way.

Appellants suggest, justifiably we think, that our recent decision in *Honolulu Ltd. v. Cain*, 244 Md. 590, 224 A. 2d 433 (1966), if not controlling, is nothing less than very persuasive. There snow had been removed from the blacktopped surface of a shopping center parking lot and piled up on the grassed area around the edges. Whenever melting occurred the water ran across the lot to drains on the opposite side. The plaintiff parked her car at a spot where the blacktop was wet and walked safely to one of the stores. While she was shopping the temperature, which had been 33 degrees for some hours, fell to 31 degrees and a patch of thin ice formed near her car, upon which, when she returned, she slipped and fell. An attendant employed to look after the parking lot had quit for the day about two hours before the accident. The trial judge submitted the issues of primary and contributory negligence to the jury. In affirming his decision we said:

"The duty of an occupant of land toward his business 'invitee' rested, in its inception, upon an implied representation of safety, 'a holding out of the premises as suitable for the purpose for which the visitor came

\* \* \*,' Prosser, *Business Visitors and Invitees,* Selected Topics of the Law of Torts 243, 261 (1953). The word 'invitee' itself, conveys the idea that the place is held out to the visitor as prepared for his reception. The occupant does not, of course, become an insurer of the safety of those who accept his invitation. But when the public is led to believe that premises have been offered for its entry, the law is clear that the occupant assumes a duty of reasonable care to see that the place is safe for the purpose. The duty extends to those who are injured when they enter in response to the invitation.

\* \* \*

"The Restatement of the Law of Torts, Second, sec. 343, sets forth the standards governing the relationship of landowner and business invitee with respect to a hazardous condition. The landowner is subject to liability for harm caused by a natural or artificial condition on his land if (a) he knows or by the exercise of reasonable care could discover the condition, (b) he should expect that invitees will not discover the danger, or will fail to protect themselves against it, (c) he invites entry upon the land without (1) making the condition safe, or (2) giving a warning. These principles have been approved many times by this Court. *Yaniger v. Calvert Bldg. & Const. Co.,* 183 Md. 285, 289, 37 A. 2d 263, 265 (1944) ; *Evans v. Hot Shoppes, Inc.,* 223 Md. 235, 239, 164 A. 2d 273, 276 (1960) ; *Morrison v. Suburban Trust Co.,* 213 Md. 64, 130 A. 2d 915 (1957) ; *Glaze v. Benson,* 205 Md. 26, 106 A. 2d 124 (1954)." *Id.* at 595-96.

Appellants also lean heavily on *King Soopers, Inc. v. Mitchell,* 140 Colo. 1119, 342 P. 2d 1006 (1959), where the plaintiff fell on a patch of ice in a supermarket parking lot. He testified he noticed the icy condition as he alighted from his car and that he warned his wife of the danger. After he finished his shopping he returned, laden with a bag of groceries, by a somewhat different route but he slipped and fell before

getting to his car. The defendant had made no effort to remove the ice and snow from the parking lot. The following excerpt from the opinion of the trial judge denying defendants' motion for judgment n.o.v., which the appellate court quoted with approval, seems especially relevant:

" '* * * snow commenced falling on March 23d, 1955, at 6:35 a.m., and continued falling until approximately noon of March 25th; that during said period there were melting temperatures, but after the snow ceased at noon of March 25th, the temperature dropped well below freezing and continued at such temperature until after the accident at 9:30 a.m., March 26th.

"It would require a strained interpretation of this exhibit [weather data] to hold that the defendant did not have knowledge of the existence of the moisture, snow, and ice which prevailed for approximately three days previous to the accident, and that the same would create a dangerous condition for customers using the parking lot, it being common knowledge that where snow melts and is followed by freezing temperatures, ice will form.' " *Id.* at 1008.

The Colorado court went on to say:

"Our cases also recognize that the landowner, in discharging his duty to a business visitor, is obligated to exercise reasonable care to *discover* perils. [Citing cases.] This duty of discovery is not satisfied by the simple expedient seemingly followed here of ignoring the hazard." *Id.* at 1009.

It is a conspicuous and significant fact that Acme failed to remove from the parking lot the 5 inches (approximately) of snow which was there on 1 January and it is fairly inferable that no effort was made in that direction during the succeeding 5 days. The weather data suggest alternate thawing and freezing which accounts for the ice and the ruts made by the cars of prior customers. As the Colorado trial judge observed, "it would require a strained interpretation of * * * [weather data]

to hold that the defendant did not have knowledge of the existence of the moisture, snow and ice which prevailed for approximately three [five in the case at bar] days previous to the accident." Of course, Mrs. Raff fell, not in the parking lot, but on the ramp. However, a jury could have found from the weather data that snow, slush or ice on the ramp melted on Friday and froze again during the night. They could have found that the temperature did not again rise above freezing until after 2:00 P.M. on Saturday. They could have found also that the "snow flurries" mentioned by Mrs. Raff were responsible for the "powdery snow" covering the ice when she fell. They might also have found that it had been blown there by the wind. The weather data indicate velocities up to 14 miles per hour during Friday night and Saturday morning.

In the circumstances here present, we think Acme was under an obligation to exercise reasonable care to discover the hazardous condition of the ramp. There can be little doubt that the condition of the ramp, at least as to the ice, existed when Acme's agents reported for duty on Saturday morning and that it remained virtually unchanged until Mrs. Raff fell. After a week of unseasonably cold weather (7 to 17 degrees below normal) and in light of the freezing temperatures then prevailing, reasonable care would seem to have required a cursory inspection, at least, of the "sidewalk" and the ramps. Even a knowing glance through the front door would have resulted in the discovery of snow on the ramp. If there had been no snow then the ice would have been visible. A little sand or salt could have mitigated and perhaps eliminated the hazardous condition.

From a comparison of the circumstances in the case before us with the circumstances in *Honolulu, supra,* it would seem to follow that Acme's obligation weighs more heavily against it than did that of the defendant in *Honolulu.* There we said:

> "Nor do we accept the defendant's contention that the dangerous condition did not exist for a sufficient length of time to permit the inference that reasonable care would have led to its discovery. Although the ice on which Mrs. Cain slipped *formed only 15 to 20 minutes before the accident,* the defendant had knowledge that water would flow from melting snow across

the lot. It knew also that it was likely on February evenings the water was apt to freeze. In these circumstances, it is immaterial that the ice formed only a short time before the plaintiff fell on it. The jury could have found that reasonable care demanded that the wet area be salted, as a precaution, *before* the ice had formed. This case clearly falls within the exception noted in *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 113 A. 2d 405 (1955) and *Lexington Market Authority v. Zappala,* 233 Md. 444, 197 A. 2d 147 (1964). The jury could have found that the factors creating the dangerous condition existed long enough to give the defendant reasonable notice, actual or constructive, of its existence." *Id.* at 598-99. (First emphasis supplied.)

It is obvious that Acme intended its customers to make the same use of the ramps that Mrs. Raff did in the instant case and which she said was her usual practice. As the court observed in *Seng v. American Stores Company,* 384 Pa. 338, 121 A. 2d 123, 124 (1956) :

"It is unnecessary to dwell on the fact that getting groceries out of a store is just as important a part of the shopping operation as paying for them * * *. Nothing can be more common to the eye than customers leaving a grocery store laden with packages."

We think, therefore, that Acme was bound to anticipate that customers would make use of the ramps despite the fact they might be covered with a thin layer of powdery snow. After all, a little snow on a concrete slab, in freezing weather, ordinarily does not create a hazardous condition, but if the snow conceals a sheet of ice, injury to someone must be expected. As the Colorado court observed, "this duty of discovery is not satisfied by the simple expedient * * * of ignoring the hazard."

## II.

Appellee insists we should affirm the trial judge's finding that Mrs. Raff was guilty of contributory negligence as a matter of law. We think her negligence *vel non* is a jury question.

We do not find in the evidence a prominent and decisive act susceptible of but one interpretation in the determination of which ordinary minds would find it impossible to differ. *Lindenberg v. Needles,* 203 Md. 8, 97 A. 2d 901 (1953). Appellee argues that since Mrs. Raff saw snow and ice on the surface of the parking lot which surrounded the ramp on three sides it must be presumed that she became aware of the possibility that ice might be under the snow on the ramp. It seems to us she could as easily have assumed that the ramp, being merely an extension of the sidewalk, had been cleared of snow and ice at the same time the sidewalk had been cleared and that the layer of powdery snow she saw was the result of earlier local snow flurries. Much is made of her decision to use the ramp rather than to "go on down a little further and off the sidewalk." Had she done so she would have found herself down on the parking lot and her testimony in this regard shows that she considered both alternatives and made a judgment that "the ramp would be the safer of the two." She testified she was ignorant of the fact there was ice under the snow. That her judgment in this regard was faulty is unfortunate but, on the record now before us, it does not amount to contributory negligence as a matter of law.

> *Judgment reversed, and case remanded for a new trial.*
> *Costs to abide the result.*