GAST, INC. *v.* KITCHNER, ET VIR

[No. 560, September Term, 1966.]

678

*Decided October 18, 1967.*

*Motion for rehearing filed November 8, 1967; denied November 13, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Frederick J. Green, Jr.,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellant.

*H. Emslie Parks,* with whom was *Z. Townsend Parks, Jr.,* on the brief for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from judgments on jury's verdict awarding damages to plaintiffs for injuries received in a fall on defendant's restaurant premises. It is also a small contribution to the already heavy accumulation of Maryland law on "Snow and Ice." [1]

Appellant (defendant) is the proprietor of a restaurant located at the corner of Belle Grove and Arundel Roads in Anne Arundel County. The building is surrounded by a paved asphalt parking area, and the land declines somewhat from the front to the back. In 1964, appellant constructed a "dairy store" at the rear of the building, with a separate entrance so that any

---

1. For example, see the recent cases of Raff v. Acme Markets, Inc., 247 Md. 591, 233 A. 2d 786 (1967); New Highland Recreation, Inc. v. Fries, 246 Md. 597, 229 A. 2d 89 (1967); Dorsch v. Kresge, 245 Md. 697, 226 A. 2d 899 (1967); Weisner v. M. C. C. of Rockville, 245 Md. 225, 225 A. 2d 648 (1967); Honolulu Ltd. v. Cain, 244 Md. 590, 224 A. 2d 433 (1966).

patron arriving at the front of the restaurant would have to walk around the side of the building to the dairy store entrance. Although the dairy store at one time remained open until 11:00 p.m., the later practice had been to close at 10:00 p.m., while the restaurant continued to serve until midnight. However, the evidence shows that on the evening of the accident, January 11, 1965, the neon sign advertising the dairy store remained on until well past the accident which occurred about 10:15 p.m.

It had snowed the day prior to the accident, so for the benefit of its dairy store patrons, appellant shoveled a path through the snow alongside of its building. Midway down the path a downspout hung from the wall, and ended approximately two feet above the asphalt. That afternoon the temperature rose to about 40 degrees, but at the time of the accident it was below freezing.

The appellee, Mrs. Kitchner, lived in the neighborhood of Gast's. From the record, it appears that Mrs. Kitchner had been quite upset over the very sudden death of her daughter on January 6, and the subsequent responsibility for the five surviving grandchildren. In fact, at the time of the accident, she was under her physician's instructions to avoid alcoholic beverages. On January 11, Mrs. Kitchner, her husband and several members of their family were together at her home where beer was served. Although the record indicates that Mrs. Kitchner had been drinking (the attending physician at the hospital testified, and a nurses' report indicated, that there was an odor of alcohol on her breath), there was probative evidence to the contrary.

Mrs. Kitchner was not wearing galoshes or rubbers, yet she safely traversed the one and one-half to two blocks from her home to Gast's wearing rubber-soled loafers. She reached the restaurant and proceeded to walk on the shoveled path as it slanted down toward the dairy store. She testified that the path, which was illuminated by floodlights, appeared a bit slippery, so she walked closer to the building. As she approached the area of the downspout, she slipped, fell and received an extensive injury, later diagnosed as a fractured left leg.

Appellant raises three basic issues on appeal in support of

its contention that the motions for directed verdict and for judgment n.o.v. should have been granted. The first issue involves the lack of evidence of primary negligence. Appellant claims that the plaintiff never actually saw the ice, but merely *concluded* that she fell on the ice because "there must have been ice" where she fell. Furthermore, if ice actually did form, the freezing could have only occurred just prior to the accident, and therefore the defendant cannot be held to have had constructive knowledge of the condition. The contention is also made that because the dairy store was actually closed, appellee could not stand in the position of a business invitee and appellant was not bound to the higher duty of making the premises safe for business guests. The appellant, in its second issue, raises the defense of contributory negligence, arguing that if ice was present and Mrs. Kitchner was looking, she would have seen it, and if she didn't see it, then appellant cannot be held to a knowledge of its existence.

Appellant's third issue on appeal challenges Judge Grady's charge to the jury, which was for the most part patterned on Restatement (Second) of Torts § 343 (1965).

This Court, after reviewing the record and the appellant's arguments, is of the opinion that, as in *Honolulu Ltd. v. Cain,* 244 Md. 590, 224 A. 2d 433 (1966), the jury could properly find that the property owner, knowing of the drainage pattern directly affecting the pathway, permitted a dangerous condition to exist and therefore failed to use the degree of care incumbent upon one who opens his premises to the general public. Therefore this Court, for reasons hereinafter set forth, affirms the verdict and judgment of the court below.

## PRIMARY NEGLIGENCE

Prefatory to discussing the issue of primary negligence, it is necessary to put to rest the question of the status of the appellee on the premises with relation to the owner-appellant. The appellant contends that the appellee was not a business invitee, but rather a bare licensee to whom something less than the duty to use reasonable care was applicable. The rationale behind this contention is that the dairy store closed at 10:00 p.m., the accident occurred sometime around 10:15 p.m. and

that the appellant's invitation to business patrons was limited to business hours. The evidence shows that the appellant's neon sign advertising the dairy store, with a large arrow pointing to its location in the rear, was still illuminated at the time of the accident, and the restaurant part of the appellant's operation was still open. The evidence further shows that the only purpose for the appellee's presence on the premises was to complete her mission of making a purchase. We believe the appellee to have been a business invitee in the full sense of the meaning of the term. See *Hutzler Bros. Co. v. Taylor,* 247 Md. 228, 236, 230 A. 2d 663, 668 (1967); *Peregoy v. Western Maryland R. R. Co.,* 202 Md. 203, 95 A. 2d 867 (1953).

The duty that the occupant of land owes to a business invitee has frequently been enunciated by this Court. A case containing one of its more recent expressions on the subject is *Honolulu Ltd. v. Cain,* 244 Md. 590, 224 A. 2d 433 (1966), wherein Judge Barnes, speaking for a majority of the Court, said:

> "The word 'invitee' itself, conveys the idea that the place is held out to the visitor as prepared for his reception. The occupant does not, of course, become an insurer of the safety of those who accept his invitation. But when the public is led to believe that the premises have been offered for its entry, the law is clear that the occupant assumes a duty of reasonable care to see that the place is safe for the purpose. The duty extends to those who are injured when they enter in response to the invitation." *Id.* at 595.

The evidence reveals that when providing an access passageway through the snow for the use of its patrons, the appellant selected a route which ran along side its building directly under three downspouts whose sole function was to drain water from the roof onto the ground. It was but a step or two from the second downspout that the appellee slipped and fell.

The appellant contends that there was no evidence of ice on the pathway, at or near the spot, where the appellee alleges that she slipped and fell. The question of the existence or non-existence of ice is of course most material, because if there was

no ice on the pathway where the appellee slipped and fell, there can be no valid finding of primary negligence on the part of the appellant.

In support of its contention the appellant argued that the appellee and her witness, Mrs. Duncan, both assumed that because the appellee had fallen there must have been ice on the pathway, but that neither of them actually saw any ice. A recitation of testimony is required to put this matter in its proper perspective. The following is an excerpt from the cross-examination of the appellee.

Q. And you noticed that there was a path that looked like it was clean, is that right? A. Yes.

Q. And as you or just before you slipped, you were looking down at the surface of the parking area on which you were walking, is that right? A. Yes, sir.

Q. And before you took the step at which time you fell, you looked down and you didn't see anything, is that right? A. No, sir. It looked like it was perfectly safe to walk.

Q. You took a look at it and it looked perfectly safe to you? A. Yes, sir.

Q. And you walked and you stepped on it and you fell? A. Yes, sir.

Q. You didn't see any ice, did you? A. No, sir, I didn't see any ice until after I slipped.

Q. And after you slipped, the ice you saw was to the Arundel Road side of that path, isn't that right? A. No, sir. The ice was underneath of where I was laying.

Q. Well, you fell to your right, did you not? A. My left side was against the building. I couldn't say whether I fell right or left. All I know, I slipped and went down on my back.

* * *

Q. I see. And what did you say you noticed then? A. When I went to get up, I noticed that it was wet and it was a thin piece of ice, what you call a layer

of ice there, and when I tried to get up I raised up on one arm and I found out that I couldn't move because my leg was hurt and twisted and I screamed for help.

\* \* \*

Q. Well, now, when your deposition was taken, Mrs. Kitchner, at page thirty-two, I said: Question. Well, if you didn't see it—meaning the ice—how do you know it was there? Answer. Well, what else could I have fell on? What else could have made me fall? Question. So you are reasoning from the fact that you fell that you slipped on the ice, is that right? Answer. That could have been the only thing there that I could have fell on. A. right.

Q. Now, isn't it fair to say, on the basis of the testimony, that even after you fell, you didn't observe ice on this black path, but you just assumed that because you fell there was ice there? A. No, sir, because I was cold laying there and knowing I was laying on ice.

\* \* \*

Mrs. Duncan testified on direct examination that she saw ice on the pathway while attending the appellee pending the arrival of the ambulance; however, on cross-examination she admitted that she "surmised" there was ice on the pathway because the appellee had fallen and she really was "not sure" whether there was, or was not, ice on the pathway.

However, exclusive of the testimony of Mrs. Duncan, in an effort to determine the proper weight to be given the testimony of the appellee, the Court cannot ignore the significance of appellee's "Exhibit No. 4A," a photograph taken about 1:00 p.m. on the day following the accident. This photograph shows a substantial icicle several inches in diameter, extending from the end of the downspout for a distance of about two feet to the asphalt surface of the pathway to which it is frozen solid, with a flange or spread of ice somewhat larger in circumference than the icicle where it adhered to the asphalt surface. This downspout is located about two steps from the spot where the appelleee testified she fell. Although the photograph was taken the day following the accident the temperature recordings

of the Weather Bureau, which are a part of the record, show that the mean temperature for that day was 31 degrees, whereas the mean temperature on the day of the accident was 29 degrees. Accordingly, if there had been any change in the weather at all, it was in the direction of slight moderation, and the photograph may therefore be considered a fair representation of ground conditions as they existed at the time of the accident.

The Court is of the opinion that there was sufficient evidence as to the existence or non-existence of ice on the pathway to constitute a jury question.

It should next be determined whether there was evidence presented from which the jury could have found: (1) that the appellant had actual or constructive notice of the hazardous condition of the premises; (2) that the appellant should have anticipated that the appellee would not discover the hazardous condition or would fail to protect herself against it; and (3) that appellant failed to take reasonable means to make the premises safe or give adequate warning of the condition. Restatement (Second) of Torts § 343 (1965).

It is obvious in this case that the appellant had actual notice of the drainage condition it had created on the premises and certainly there was evidence from which the jury could have found that it should have reasonably anticipated the formation of ice on the pathway as a result of that condition. The appellant knew of the location of the downspout directly over the pathway which route it had selected, it knew that five inches of snow had fallen the previous day and it is chargeable with the knowledge that the downspout would be carrying off water from the melting snow, discharging it directly onto the pathway it had cleared. It is also chargeable with the knowledge that during the month of January it is not uncommon for water to freeze at night.

We hold that the appellant, knowing of the location of the downspout and its specific function, could properly be held to have acted unreasonably and negligently in routing the shoveled pathway directly under the downspout. And as was stated in *Honolulu Ltd., supra,* at p. 598:

"In these circumstances, it is immaterial that the ice formed only a short time before the plaintiff fell on it. The jury could have found that reasonable care demanded the wet area be salted, as a precaution *before* the ice formed. * * * The jury could have found that the factors creating the dangerous condition existed long enough to give the defendant reasonable notice, actual or constructive, of its existence."

We further think that evidence existed from which it could properly be found that the appellee could not have reasonably been expected to discover the hazardous condition. It should be borne in mind that the route of the pathway had been shoveled through the snow only the day before the accident. Although the appellee had entered the store on many occasions, there is no evidence that she had ever used the same route as she did on this occasion and under similar weather conditions.

In sum, we think there was sufficient evidence on the question of primary negligence for the court to have properly referred that issue to the jury.

## CONTRIBUTORY NEGLIGENCE

This Court has repeatedly held that a defendant cannot be found guilty of contributory negligence *as a matter of law* unless "the evidence permits of but one interpretation which shows some distinct, prominent and decisive act [which has contributed to the happening of the accident] in regard to which there is no room for ordinary and reasonable minds to differ." *Boyd v. Simpler,* 222 Md. 126, 131, 158 A. 2d 666, 669 (1960). See *Williamson Truck Lines, Inc. v. Benjamin,* 244 Md. 1, 8, 222 A. 2d 375 (1966), *Wiggins v. State, to the use of Collins,* 232 Md. 228, 192 A. 2d 515 (1963). And in *Craig v. Greenbelt Consumer Services, Inc.,* 244 Md. 95, 222 A. 2d 836 (1966), Judge Marbury stated:

"In measuring contributory negligence the standard of care imposed upon a person for his own protection is that of a reasonable man under like circumstances, *Sanders v. Williams,* 209 Md. 149, 120 A. 2d 397, and the reasonable man's conduct is to be judged in light

of all the relevant knowledge which the person actually then had. Cf. *McManamon v. High's Corp.*, 230 Md. 370, 187 A. 2d 318; 2 Harper and James, *Torts*, Section 16.5, p. 908 (1956)." *Id.* at 97, 222 A. 2d at 837.

In the instant case there was no evidence that the appellee committed any decisive act of an unreasonable nature which contributed to the happening of the accident. There was evidence from which the jury could have found that the appellee acted as a reasonable person would have acted under the circumstances.

The testimony of the appellee as to what happened as she walked along the cleared pathway was simple and direct. She stated: "I was looking at the ground. If it was ice there, it was invisible because it was a thin sheet, and down I went."

We certainly cannot say as a matter of law that ice is always visible upon reasonable inspection by an invitee. This was properly a question for the jury to consider. Cases dealing with slipping on ice recognize the varying degrees of opaqueness of ice and many adjectives are used in describing its appearance, such as, "glassy sheet," "smooth," "slick," "thin," "slippery," "glazed," "solid," "thick," "wavey," "ridged," and "uneven," to mention a few. See *Harding v. City of St. Joseph*, 7 S. W. 2d 706 (Mo. 1928) and *Eisentrager v. Great Northern Ry. Co.*, 178 Ia. 713, 160 N. W. 311 (1916).

In the instant case the evidence shows that the ice did not cover the entire distance of the cleared pathway but only in the area adjacent to the downspout half way down the pathway and the appellee had covered the distance along the pathway to the area of the downspout before she slipped and fell. Although a light on the end of the building reflected illumination on the pathway, the surface which the ice covered was black and the question of its ready recognition and identification as ice was properly in the province of the jury.

It is true that there was evidence that the appellee had been drinking beer but since there was no conclusive evidence that she was intoxicated, the question of the degree to which this might have impaired her faculties was also properly one for the jury to answer.

We do not believe that as a matter of law the appellee was guilty of contributory negligence.

## INSTRUCTIONS TO THE JURY

The appellant with scalpel-like precision dissected the instructions given by the lower court to the jury and thus found the dismembered charge to contain errors which it alleges "individually and cumulatively entitle it to a new trial."

A consideration of the lower court's instructions as a whole convinces the Court that the charge fairly and completely covered the law consistent with the appellant's theory of the case. *Lloyd v. The Yellow Cab Co.,* 220 Md. 488, 495, 154 A. 2d 906, 910 (1959) ; *West v. Belle Isle Cab Co.,* 203 Md. 244, 251, 100 A. 2d 17, 20 (1953), *Bull Steamship Lines v. Fisher,* 196 Md. 519, 529, 77 A. 2d 142, 148 (1950).

The appellant was particularly disturbed by the failure of the lower court to instruct the jury that if the hazard on the land was equally apparent to both the invitee and the owner of the land, the invitee could not recover from injuries sustained from such hazard. However, the record shows that counsel for the appellant admitted to the court that such a statement of the law was implicit in the instructions actually given, but that counsel felt that it should have been stated in language better understood by laymen. We do not believe the failure to grant this instruction in the language suggested by the appellant to be reversible error, indeed if it be error at all, for as was stated in *Aleshire v. State,* 225 Md. 355, 370, 170 A. 2d 758, 765 (1961) : "Requested written instructions, even though they be correct expositions of the law, need not be granted, provided 'the matter is fairly covered by instructions actually given; * * *.' Maryland Rule 554 b 1." As we have already stated we think the law was fairly covered by the lower court's instructions.

*Judgments affirmed, with costs.*