## MENISH ET VIR *v.* POLINGER COMPANY T/A HIGHLAND HOUSE

[No. 117, September Term, 1975.]

*Decided April 27, 1976*

---

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ., and HARRY A. COLE, Associate Judge of the Supreme Bench of Baltimore City, specially assigned.

*Russell Hardy, Jr.* for appellants.

*Paul V. McCormick,* with whom were *McInerney, Layne, McCormick, Sullivan& Rice* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

In this case, we are called upon to adjudge whether the appellant, Maryal V. Menish, was guilty of contributory negligence as a matter of law, when she slipped and fell on a patch of ice, upon a walkway beneath the marquee at an entrance to the Highland House, in Chevy Chase, Maryland. That building was owned and operated by the appellee, Polinger Company.

The morning of February 14, 1973, was cold and drizzly. Mrs. Menish, a real estate salesperson, affiliated with CBS Realty, whose offices were in the Highland House, had an appointment with a client, Mrs. Lela Mead, to revisit a home which Mrs. Mead had purchased through her. When Mrs. Mead departed her home to pick up Mrs. Menish, at about 11 a.m., there was no indication that any of the precipitation, which had been falling as a fine mist since at least 8 a.m., was freezing, either upon her automobile, or upon the highways or adjacent sidewalks.[1] The appellant walked a

---

1. An official U.S. Department of Commerce weather report, for February 14, 1973, for Washington National Airport — seven miles distant from the scene — disclosed that the temperature remained at 35 degrees from 9:53 a.m. until 12:54 p.m., with intermittent light rain from 8:30 a.m. until 12:40 p.m.

distance of approximately 50 feet, down the sidewalk from her residence, in the District of Columbia, to embark in Mrs. Mead's automobile, without encountering any slippery conditions. The two ladies drove to Highland House in order that Mrs. Menish might obtain from the offices of CBS Realty, the keys for the residence they were en route to inspect. During the 10 or 15-minute drive from the Menish residence to Highland House, there was no indication of any freezing conditions.

The appellant disembarked from the Mead automobile, walked across a driveway and along a cement sidewalk, again without encountering any icing conditions. She noted nothing unusual about the condition of the concrete sidewalk approaching the marquee, other than "that it was wet." As she got upon a brick walkway leading from the concrete sidewalk and under the marquee at the Park Avenue entrance to the Highland House, and after she had walked "about a third of the way under the marquee" toward the doorway, her foot slipped upon an icy area and she fell and broke her right ankle. It was only as she lay upon the ground that she was aware of the presence of ice; the glazed coating was transparent, with the bricks of the sidewalk showing through it. As she lay there, awaiting assistance, she noticed that water was dripping from an overhead recessed fixture in the ceiling of the marquee. At the time of the incident, the appellant was wearing low walking shoes with leather soles and rubber heels.

Mrs. Mead, waiting in her automobile, saw Mrs. Menish slip and fall when whe was "about a third of the way into the brick walkway which led from the cement walk to the door of the Highland House." As she walked along the concrete sidewalk, en route to assisting Mrs. Menish, she found no slippery conditions on it. Although forewarned by Mrs. Menish's predicament, as she got to "about the same spot [where Mrs. Menish was, she] slipped and fell, too," but was uninjured.

There was testimony offered in the trial court on behalf of the appellee from Mrs. Rose Berlin, resident manager of the Highland House, that before being advised of Mrs. Menish's

injury, she had received no notice that morning that ice was forming on any of the sidewalks adjacent to the building. There was also testimony from Jorge Carmouze, the garageman and outside porter at the Highland House, that prior to the report of Mrs. Menish's fall, he had neither heard of, nor seen, the accumulation of any ice upon the sidewalks adjacent to the building; it was his view that a "freezing rain" had begun about "10 minutes before" he heard of the incident. When he arrived at the place where Mrs. Menish had fallen, he confirmed that there was ice upon the brick walk area beneath the marquee and applied a commercial thawing agent.

During the course of the trial in the Circuit Court for Montgomery County, the trial judge (Mitchell, J.), in accordance with Maryland Rule 552 c, reserved decision, both at the conclusion of the appellant's evidence, as well as at the close of all the evidence, upon the appellee's motions for a directed verdict, predicated upon contentions (a) that there was no legally sufficient evidence of primary negligence on the part of the appellee, and (b) that the appellant, Maryal V. Menish, was guilty of contributory negligence as a matter of law.

The jury returned verdicts in favor of Mrs. Menish in the amount of $4,766.30 as her damages, and in favor of her and her husband, the appellant, George T. Menish, in the amount of $200.00 for loss of consortium. After the rendition of these verdicts, the trial court, pursuant to Rule 563, entered judgments N.O.V. in favor of the appellee upon each count solely upon the ground that Maryal V. Menish was guilty of contributory negligence as a matter of law. From such judgments, the Menishes appealed to the Court of Special Appeals; we granted a writ of certiorari before the case was heard in that court. See Maryland Code (1974), Courts and Judicial Proceedings Article, § 12-203.

Although "primary negligence and contributory neg- ligence are often thought of as simply opposite sides of the same coin," there is a significant difference between them; while "primary negligence involves a breach of duty

owed to another, contributory negligence involves a failure to take proper precautions for one's own safety." *Baltimore County v. State, Use of Keenan,* 232 Md. 350, 362, 193 A. 2d 30, 37 (1963).

Although the appellee has devoted a substantial portion of its brief to its contention that there was no legally sufficient evidence of primary negligence on its part, the trial court, in granting the appellee's motion for judgment N.O.V., did so on the ground that, as a matter of law, Mrs. Menish was guilty of negligence which contributed to the cause of the accident. As the appellee conceded at argument before us, implicit in this was a finding by the court that there had been sufficient evidence of negligence on the part of the appellee to go to the jury. No cross-appeal was filed by the Polinger Company pursuant to Maryland Rule 1012 b, and none was required, *Burkert v. Smith,* 201 Md. 452, 454-55, 94 A. 2d 460, 461 (1953):

> "Although no mention was made by the trial court of the question of the defendants' primary negligence, it was argued in the briefs and orally in this court. The question is necessarily involved in an examination of the Circuit Court's action, for even if it should be found to have been in error in holding the plaintiff guilty of contributory negligence the action may still not be disturbed if there was no sufficient evidence of the defendants' negligence to require submission to the jury. Accordingly, our inquiry is as to both primary and contributory negligence."

As a consequence, we have made an independent review of the testimony, and have concluded that the evidence, and reasonable inferences to be drawn therefrom, were sufficient to warrant the submission of the issue of primary negligence to the jury. We now turn to the question of contributory negligence.

The law contemplates that every person having the capacity to exercise ordinary and reasonable care for his

own protection against injury, will do so; it is when he fails to use such care that he is guilty of contributory negligence. *See Southern Maryland Elec. Co-Op., Inc. v. Blanchard, supra; Baltimore County v. State, Use of Keenan, supra.*

"Contributory negligence is the failure to observe ordinary care for one's own safety. 'It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances.' *Potts v. Armour & Co.*, 183 Md. 483, 490, [39 A. 2d 552, 556] (1944)." *Kasten Constr. Co. v. Evans*, 260 Md. 536, 541, 273 A. 2d 90, 92 (1971). *See also Campfield v. Crowther*, 252 Md. 88, 93, 249 A. 2d 168, 172 (1969).

In *Craig v. Greenbelt Consumer Services, Inc., supra*, citing Restatement (Second) of Torts § 463 (1965) and W. Prosser, *Torts* § 64, at 427 (3rd ed. 1964), "contributory negligence" is defined as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." 244 Md. at 97, 222 A. 2d at 837.

In measuring contributory negligence, the standard of care to be used as the criterion is that of an ordinarily prudent person under the same or similar circumstances, not that of a very cautious person. *Sanders v. Williams*, 209 Md. 149, 153, 120 A. 2d 397, 399 (1956); and what an ordinarily prudent and careful person would do under a given set of circumstances is usually controlled by the instinctive urge of one to protect himself from harm. *Greer Lines Company v. Roberts*, 216 Md. 69, 79, 139 A. 2d 235, 239 (1958); *Martin v. Sweeney*, 207 Md. 543, 548, 114 A. 2d 825, 827 (1955).

In the trial court, as here, the appellee, in contending that the appellant was guilty of contributory negligence, argued that "she doesn't know whether she even looked [at] the brick area to see if ice was there," and cites testimony,

elicited from Mrs. Menish, upon cross-examination by the appellee, as follows:

"Q. And you did not have any difficulty walking on the sidewalk?
A. No.
Q. Did you look down at the sidewalk as you were walking on it?
A. Just glanced at it.
Q. Did you see anything unusual about it?
A. It was wet.

* * *

"Q. Did you look down at the brick as you were walking on it?
A. I probably just glanced at it. I don't remember looking at it. There really wasn't that much time.

* * *

"Q. Then as you started walking up the walkway, this brick walkway, did you look down at all?
A. I don't know that I did. It happened so fast, I took about three steps on it, and on the third step my feet just went from under me and I fell.

* * *

"Q. As you were walking in the building did you notice any ice on the brick sidewalk, brick walkway?
A. As I was walking in?
Q. Yes.
A. I don't even know I looked at the brick other than to notice there was nothing, you know, that I should trip on, for instance, a bicycle or something, there was nothing there."

Before the doctrine of contributory negligence can be successfully invoked, it must be demonstrated that the

injured party acted, or failed to act, with knowledge and appreciation, either actual or imputed, of the danger of injury which his conduct involves. *Hooper v. Mougin,* 263 Md. 630, 634, 284 A. 2d 236, 239 (1971); *Rogers v. Frush,* 257 Md. 233, 239, 262 A. 2d 549, 552 (1970); *Honolulu, Ltd. v. Cain,* 244 Md. 590, 599, 224 A. 2d 433, 438 (1966); *Tie Bar, Inc. v. Shartzer,* 249 Md. 711, 715-16, 241 A. 2d 582, 585 (1968); *Sanders v. Williams, supra,* at 152, 120 A. 2d at 399. Stated another way, when one who knows and appreciates, or in the exercise of ordinary care should know and appreciate, the existence of danger from which injury might reasonably be anticipated, he must exercise ordinary care to avoid such injury; when by his voluntary acts or omissions he exposes himself to danger of which he has actual or imputed knowledge, he may be guilty of contributory negligence. *Burkert v. Smith,* 201 Md. 452, 456-59, 94 A. 2d 460, 461-63 (1953); *Yaniger v. Calvert Bldg. and Constr. Co.,* 183 Md. 285, 291, 37 A. 2d 263, 265 (1944).

In *Sanders v. Williams, supra,* our predecessors, speaking through Judge Hammond, concerning the foreseeability of harm in connection with the invocation of contributory negligence, stated:

"As is true of primary negligence, one measure of contributory negligence *is the need, in a given situation, to anticipate danger. Presence or absence of reasonable foresight is an essential part of the concept.* One is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee what common experience tells may, in all likelihood, occur, and to anticipate and guard against what usually happens. * * * Absent actual or constructive knowledge to the contrary, one may act on the assumption that he will not be exposed to danger that will come only by the breach of duty which another owes him. He is not bound to anticipate negligent acts or omissions on the part of others unless, under the circumstances, an ordinarily prudent person would

know, or should know, that it was not safe to make the assumption of due care on the part of the other person." 209 Md. at 152, 120 A. 2d at 398-99. (citations omitted, emphasis added)

The principle stated in *Sanders v. Williams, supra,* was quoted with approval and followed in *Hensley v. Pirzchalski,* 212 Md. 471, 474, 129 A. 2d 691, 693 (1957). *See also Tie Bar, Inc. v. Shartzer, supra.*

Thus, in the application of the doctrine of contributory negligence, a critical element is whether or not the plaintiff, chargeable with notice of what a reasonably and ordinarily prudent person would have foreseen, and chargeable with foreseeing what common experience tells may, in all likelihood, occur, took proper precautions for his own safety. *Baltimore County v. State, Use of Keenan, supra. See also Kasten Constr. Co. v. Evans, supra; Hooper v. Mougin, supra; Sanders v. Williams, supra;* Restatement (Second) of Torts § 466 (1965).

The rule to be applied, in determining whether the facts justify a holding that the plaintiff was guilty of contributory negligence as a matter of law, is that "the act [or omission] so relied on must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring it to be negligence." *Reiser v. Abramson,* 264 Md. 372, 378, 286 A. 2d 91, 93 (1972); *Kasten Constr. Co. v. Evans, supra,* at 541-42, 273 A. 2d at 93; *Gast, Inc. v. Kitchner,* 247 Md. 677, 686, 234 A. 2d 127, 132 (1967); *Vokroy, Admr. v. Johnson,* 233 Md. 269, 273, 196 A. 2d 451, 453 (1964).

In *Reiser v. Abramson, supra,* Judge Smith, writing for this Court, stated:

"The burden of proving contributory negligence is on the defendant. *Baltimore & O.R.R. v. Plews,* 262 Md. 442, 454, 278 A. 2d 287 (1971). As we observed in *Rogers v. Frush,* 257 Md. 233, 239, 262 A. 2d 549 (1970), 'It is not every action on the part of a litigant which an opponent by way of "second guessing" or hindsight may successfully label as

contributory negligence.' Also, as this Court said in *Abraham v. Moler*, 253 Md. 215, 252 A. 2d 68 (1969):

" 'Contributory negligence is an affirmative defense which was available to appellants and they had the burden of proving not only that a reasonably prudent person would, in the circumstances, have taken certain precautions but also that Mrs. Moler failed to take those precautions and that her failure so to do directly contributed to her injury.' *Id.* at 218.

"The question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence. Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury. In order that a case may be withdrawn from the jury on the ground of contributory negligence, the *evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds. Baltimore & O.R.R. v. Plews, supra,* at page 454, citing *Balto. Transit Co. v. Castranda,* 194 Md. 421, 434, 71 A. 2d 442 (1950)." 264 Md. at 377-78, 286 A. 2d at 93. (emphasis added)

In *Gast, Inc. v. Kitchner, supra,* the appellee, walking on a path shoveled in the snow by the appellant, slipped and fell on a patch of ice which had accumulated, beneath a downspout, after the temperature had gone below freezing. After pointing out that there was "no evidence that the appellee committed any decisive act of an unreasonable nature which contributed to the happening of the accident," and that "[t]here was evidence from which the jury could have found that the appellee acted as a reasonable person

would have acted under the circumstances," Judge Finan, writing for the Court, stated:

> "The testimony of the appellee as to what happened as she walked along the cleared pathway was simple and direct. She stated: 'I was looking at the ground. If it was ice there, it was invisible because it was a thin sheet, and down I went.'
>
> "We certainly cannot say as a matter of law that ice is always visible upon reasonable inspection by an invitee. This was properly a question for the jury to consider. Cases dealing with slipping on ice recognize the varying degrees of opaqueness of ice and many adjectives are used in describing its appearance, . . ." 247 Md. at 687, 234 A. 2d at 132.

In holding that the appellee was not guilty of contributory negligence as a matter of law, Judge Finan continued:

> "In the instant case the evidence shows that the ice did not cover the entire distance of the cleared pathway but only in the area adjacent to the downspout half way down the pathway and the appellee had covered the distance along the pathway to the area of the downspout before she slipped and fell. Although a light on the end of the building reflected illumination on the pathway, the surface which the ice covered was black and the question of its ready recognition and identification as ice was properly in the province of the jury." 247 Md. at 687, 234 A. 2d at 133.

In *Honolulu, Ltd. v. Cain, supra,* the appellee fell on a patch of ice on the black macadam surface of a shopping center parking lot. The ice formed, about 15 or 20 minutes before the time of the accident, from water flowing from melting piles of snow toward drains on the lot.

Judge Barnes there, writing for the Court, after noting that "[t]he ordinary person can encounter many dangers safely if he is fully aware of their presence at the time" and that "[w]here a dangerous condition is obvious, the plaintiff

may be charged with knowledge of it, and the knowledge of the condition may remove the element of unreasonableness from a danger," stated:

"The only evidence that Mrs. Cain had knowledge of the dangerous condition is that she 'splashed her stocking' while proceeding from the parked car to the shopping area, and that the parking area generally was well-illuminated. On the other hand, there was evidence that Mrs. Cain did not recall precisely where this wet area was, and that she walked back to the car by a different route from the one she had first taken. On returning, she encountered no ice whatsoever until she fell. On these facts, we cannot say that she was charged with knowledge that patches of ice had formed, or were likely to form, on a particular part of the lot surface.

\* \* \*

"We see no basis for the defendant's suggestion that Mrs. Cain was contributorily negligent as a matter of law. She had no reason to know of the danger to which she was exposed. Moreover, the jury could find that her exposure to the danger was unintentional and completely reasonable under the circumstances. Mrs. Cain, following her daughter-in-law, returned to the car by zigzagging between other parked vehicles. This route was no doubt less brightly lit than the wider traffic lanes on the lot but the route was a reasonable one for the plaintiff to have followed." 244 Md. at 599-600, 224 A. 2d at 438.

Again, in *Raff v. Acme Markets*, 247 Md. 591, 233 A. 2d 786 (1967), our predecessors held that the appellant, who had slipped on a supermarket ramp, the surface of which was covered with ice concealed by powdery snow, was not guilty of contributory negligence as a matter of law, but that such issue was properly for the jury. In reversing judgments

entered upon directed verdicts in favor of the defendants, the Court pointed out that there was no evidence of "a prominent and decisive act susceptible of but one interpretation in the determination of which ordinary minds would 'find it impossible to differ." In *Raff* Judge McWilliams, writing for the Court, stated:

> "It seems to us she could as easily have assumed that the ramp, being merely an extension of the sidewalk, had been cleared of snow and ice at the same time the sidewalk had been cleared and that the layer of powdery snow she saw was the result of earlier local snow flurries. . . . She testified she was ignorant of the fact there was ice under the snow. That her judgment in this regard was faulty is unfortunate but, on the record now before us, it does not amount to contributory negligence as a matter of law." 247 Md. at 600, 233 A. 2d at 790-91.

These same principles were applied in *Reiser v. Abramson, supra,* (where the appellant slipped on water on the floor of the laundry room in her apartment house which she had not seen until after she had fallen), and in *Mondawmin Corp. v. Kres,* 258 Md. 307, 266 A. 2d 8 (1970) (where the appellee slipped and fell upon water, which had been sprayed on an exterior staircase from an adjacent fountain). In each of these cases, in holding that the plaintiffs' contributory negligence was for determination by the jury, the Court pointed out that water is a colorless liquid and "often is not visible to the naked eye;" that its "visibility depends upon the angle at which it is viewed and the direction from which [the] light comes." In neither case was there evidence of any reason on the part of the plaintiff to anticipate any dangerous condition, nor evidence of any prominent or decisive act or omission which directly contributed to the accident.

*In accord* are the holdings in *Snider v. Senneville,* 267 Md. 552, 558, 298 A. 2d 175, 178 (1973) (where the appellant tripped over a tool box which had temporarily been placed by the appellee in a housewife's living room); *Hutzler Bros.*

*Co. v. Taylor,* 247 Md. 228, 239-40, 230 A. 2d 663, 670 (1967) (where the appellee fell in a depression in the macadam surface of a parking lot adjoining the top step of a steep stairway); *Denbow v. C & P Telephone Co.,* 199 Md. 609, 619, 87 A. 2d 584, 589 (1952) (where the appellant's attention was distracted and he stepped in an unprotected manhole while crossing a narrow public alley); *Reed v. Mayor and City Council of Balto.,* 171 Md. 115, 125, 188 A. 15, 19 (1936) (where the appellant tripped over a platform about three inches high in a passageway in a public market, which was of the same color as the walkway).

In considering whether the jury should have decided the question of Mrs. Menish's contributory negligence, or whether it should have been decided by the court, notwithstanding the jury's verdict, we must view the evidence and reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, *Wesko v. G.E.M., Inc.,* 272 Md. 192, 200, 321 A. 2d 529, 534 (1974); *Lusby v. First Nat'l Bank,* 263 Md. 492, 499, 283 A. 2d 570, 573 (1971); *Ensor v. Ortman,* 243 Md. 81, 91, 220 A. 2d 82, 88 (1966). *See also Brown v. Ellis,* 236 Md. 487, 491, 204 A. 2d 526, 527 (1964). We must resolve all conflicts in the evidence in her favor and assume the truth of all the evidence and such inferences as may be naturally and reasonably deducible therefrom, in the light most favorable to her. *Wheeler Transportation Co. v. Katzoff,* 242 Md. 431, 219 A. 2d 250 (1966); *Safeway Stores, Inc. v. Bolton,* 229 Md. 321, 182 A. 2d 828 (1962); *Zeamer v. Reeves,* 225 Md. 526, 171 A. 2d 488 (1961); and *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961). Applying this test we conclude that the jury's verdict should not have been set aside and judgments N.O.V. should not have been entered in favor of the appellee.

Although the morning of the accident was cold and drizzly, there was no indication that the precipitation was freezing. The pathway used by Mrs. Menish from her home to embark in Mrs. Mead's automobile was not slippery; no hazardous driving conditions were encountered on the drive to the grounds of the Highland House; during her walk across a driveway and along a concrete sidewalk leading to

the brick entrance way to the apartment house it was established only that the sidewalk "was wet," it was not slippery in any places and Mrs. Menish had no difficulty in walking upon it. As she approached the entrance way there was no evidence of any knowledge and appreciation on her part, either actual or imputed, that she would encounter any icy condition or foresee any potentiality of danger from such a condition. *See Sanders v. Williams, supra.*

According to her testimony, the ice was invisible due to its transparency, with the brick walkway beneath it showing through; she was aware of its existence only after she had slipped and fallen. The transparency of the ice was supported by the testimony of Mrs. Mead who, though forewarned by having seen Mrs. Menish fall, fell herself when she reached the same place. As was pointed out in *Gast, Inc. v. Kitchner, supra,* "we certainly cannot say as a matter of law that ice is always visible upon reasonable inspection by an invitee. This was properly a question for the jury to consider."

Having encountered no icy or slippery condition whatsoever until after she had taken about three strides on the brick walkway — appearing to be about ten feet in length, beneath the marquee, leading to the entrance way — we cannot say that she was chargeable with knowledge that a patch of ice had formed, or was likely to form in the area beneath the marquee. *See Honolulu, Ltd. v. Cain, supra; Raff v. Acme Markets, supra.* If anything an ordinarily prudent person, under such circumstances, would have every reason to assume that that area, covered as it was from the weather, would certainly not expose one to the hazard of an icy surface.

Although the appellee makes much of the fact that Mrs. Menish testified, upon cross-examination, that "she doesn't know whether she even looked [at] the brick area," there was testimony that, even though she was not peering downward at the sidewalk area, she was generally looking where she was walking and was not cognizant of any impediments in her way. As our predecessors pointed out in *Denbow v. C & P Telephone Co., supra,* "[a] careful person

would not ordinarily look down at the pavement under such circumstances." 199 Md. at 619, 87 A. 2d at 589.

In short it is our conclusion that the evidence does not show on her part "some prominent and decisive act [or omission] which directly contributed to the accident and which was of such a character as to leave no room for differences of opinion thereon by reasonable minds." *See Reiser v. Abramson, supra.* As Professor Prosser succinctly stated it: "[I]n the ordinary case, where enough uncertainty can be conjured up to make an issue as to what the reasonable man would have done, that issue goes to the jury." W. Prosser, *Torts* § 65, at 420 (4th ed. 1971). We think the issue of Mrs. Menish's contributory negligence properly remained with the jury which found in her favor in this regard.

As we see it the holdings in *Craig v. Greenbelt Consumer Services, Inc.,* 244 Md. 95, 222 A. 2d 836 (1966); *Southern Maryland Elec. Co-Op., Inc. v. Blanchard,* 239 Md. 481, 212 A. 2d 301 (1965), and in *Sugar v. Traub,* 233 Md. 320, 196 A. 2d 869 (1964), relied on by the appellee, and in each of which the plaintiff was held to be contributorily negligent as a matter of law are inapposite upon their facts, and clearly distinguishable. In *Craig* the plaintiff testified that she saw sawdust on the floor in the aisle of the supermarket, she knew it to be slippery and intentionally walked through it although she had a reasonable alternative in walking in an area which was clear; in *Southern Maryland Elec.* the appellee was held to be chargeable with knowledge of the presence of an uninsulated electric wire belonging to the appellant, with which he came into contact while attempting to install a television antenna on top of his trailer; in *Sugar* the appellant, who slipped and fell on a damp strip on the floor in the appellee's utility room, admitted that she knew that the floor was occasionally damp, that she was not watching where she stepped and that if she had looked she would have seen the water and would have wiped it up.

*See also Eyler v. Adolph Beauty System, Inc.,* 238 Md. 227, 208 A. 2d 609 (1965) and *Berzups v. H. G. Smithy Co.,* 22 Md. App. 157, 321 A. 2d 801, *cert. denied,* 272 Md. 737 (1974), in

each of which the plaintiffs were found to be contributorily negligent as a matter of law when, having the option to step in an area clear of ice, they chose routes where ice was present.

From what has been said, the verdicts returned by the jury in favor of the appellants should not have been set aside; judgments should have been entered in their favor upon the verdicts returned by the jury. Accordingly, the judgments N.O.V. entered by the lower court in favor of the appellee will be reversed and, pursuant to Maryland Rules 563 c 1 and 875 a, we shall enter judgment in favor of the appellant, Maryal V. Menish, in the amount of $4,766.30, and in favor of both the appellants in the amount of $200.00, with interest dating from May 16, 1975, the date that the judgments N.O.V. were entered in the lower court. *See Kirsner v. Fleischmann*, 261 Md. 164, 274 A. 2d 339 (1971); *Westinghouse Elec. Corp. v. Minnix*, 259 Md. 305, 269 A. 2d 580 (1970); *Virginia Freight Lines, Inc. v. Montgomery*, 256 Md. 221, 260 A. 2d 59 (1969).

> *Judgments reversed; judgment in favor of the appellant, Maryal V. Menish, against the appellee entered for $4,766.30; judgment in favor of the appellants, Maryal V. Menish and George T. Menish, against the appellee entered for $200.00, with interest upon both judgments from May 16, 1975; costs to be paid by appellee.*