# FINZEL *v.* MAZZARELLA, ETC.

[No. 694, September Term, 1966.]

*Decided December 7, 1967.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Horace P. Whitworth, Jr.*, for appellant.

*Lewis R. Jones* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Appellant (Finzel), in pursuit of damages for the interment of his truck, wound up instead with a judgment against himself for costs. He now complains that the verdict of the trial judge, sitting without a jury, was clearly erroneous. We do not agree.

Finzel, aged 45, lives at Grantsville in Garrett County. For the past 20 years he has been employed as a shovel operator in the strip mining business. As a sideline he does contract hauling with his "1964 Ford two-ton truck." He also owns a "barroom." The appellee (Mazzarella), aged 44, lives just across the Mason-Dixon line in Pennsylvania. He has been strip mining since 1955 and for 6 years he has been working a property in the mountains near Bittinger. Finzel has been hauling coal for Mazzarella, off and on, for "the entire six years."

In open-pit or strip mining the coal seam is exposed by removing the overlying dirt, rock and shale with power shovels or bulldozers. In the case at bar the overburden was thrown, as is customary, to the downhill side, becoming what is called the "spoil pile." The uphill side of the pit is known as the "high wall." The spoil pile was, in this instance, about 30 feet high. When the seam of coal has been laid bare a power shovel is used to load the coal directly into trucks which must be moved into the pit close to the shovel.

On Sunday night, 30 January 1966, Mazzarella told Finzel to send out his truck the next morning as he was going to load coal. He said it was not raining at the time. When Finzel's truck, driven by Paul Wilhelm, aged 24, arrived at the pit on Monday morning, Mazzarella had already loaded two trucks. At the time it was "raining awful," according to Finzel. Maz-

zarella said "it was very rainy and it was thawing." Finzel said "it had rained [for] a couple [of] days." At the pit where Finzel was employed they "quit hauling * * * on account of the rain." Mazzarella testified "it was actually too wet to work" and that "everybody was wet and wanted to go home." Since "the trucks were there," however, he didn't "want to send them out empty" so he thought he "would try to load them." Wilhelm backed his truck into the pit close to the shovel, as did the drivers of the first two trucks, and stood on top of it while it was being loaded. When the truck was about three-quarters full "the low wall [spoil pile] * * * slid in and covered it up." Neither Wilhelm nor Mazzarella was injured.

Later in the day Finzel said he found Mazzarella and Wilhelm "sitting in * * * [his] barroom waiting to see what * * * [he] wanted to do" about the truck. Spurred to action by Finzel they went back to the pit and "drug the truck out." Had they not acted promptly, Finzel said, the truck "would have been in there for days."

When Mazzarella's insurer refused to pay for the rehabilitation of the truck Finzel filed suit in the Garrett County circuit court. The case was tried before Hamill, J., sitting without a jury, on 15 December 1966. On 19 January 1967 Judge Hamill filed an opinion in which he set forth his reasons for entering a verdict in favor of Mazzarella. He said Finzel failed to establish primary negligence on the part of Mazzarella. He pointed out that while the rain had created a dangerous situation it "was no more of a dangerous situation than is customary and usual in strip mining operations." He found "no evidence or testimony whatsoever" to show that Mazzarella "had any knowledge or any way of obtaining knowledge that the spoil pile would slide onto" Finzel's truck, nor, he added, was there "anything unusual or negligent in the conduct of * * * [Mazzarella's] mining operation."

Finzel, in his declaration and in his brief in this Court, asserts that he (and his property) are entitled to the status of a business invitee and that Mazzarella was remiss in his duty to use reasonable care to see that his premises were safe for the purpose for which Finzel was invited to enter thereon. He charges "no warning was given * * * of the existence of said

condition or the danger created thereby." The general principles governing the relationship of a possessor of land and a business invitee have been discussed in recent decisions. *Raff v. Acme Markets, Inc.,* 247 Md. 591, 233 A. 2d 786 (1967); *Honolulu, Ltd. v. Cain,* 244 Md. 590, 224 A. 2d 433 (1966).

Obviously inherent in the general principles set forth in the above mentioned cases is the proposition that a possessor of land is usually under no obligation to protect an invitee against dangers which are known to the invitee. See, W. Prosser, *Law of Torts,* sec. 61, p. 403 (3rd ed. 1964). In *Yaniger v. Calvert Bldg. & Con. Co.,* 183 Md. 285, 289, 37 A. 2d 263 (1944) it was said:

> " 'The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality or the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant, and not known to the person injured, that a recovery is permitted. * * * And hence there is no liability for injuries from dangers that are obvious, *or as well known to the persons injured as to the owner or occupant.'* " Quoting from 20 R.C.L., *Negligence* (emphasis supplied).

The Court went on to say that it is the comparative knowledge of the parties that is the test of liability and that when the plaintiff's knowledge of the dangerous condition equals or surpasses that of the defendant there can be no recovery. In *Glaze v. Benson,* 205 Md. 26, 33, 106 A. 2d 124 (1954), Judge Hammond (now Chief Judge), for the Court, said:

> "In testing whether the appellee had reason to believe that a patron would not realize the risk of diving from the pavilion, it is to be remembered that he was entitled to assume that patrons would act as reasonable men act. *Restatement, Torts,* Sec. 289. As it is there suggested, the appellee could assume that his patrons would possess such perception of the surrounding circumstances as a reasonable man would have, that they would possess such knowledge of other pertinent

matters as a reasonable man would have, and that they would correlate such perception and knowledge with reasonable intelligence and judgment so as to infer the nature of the dining pavilion and the risk of diving from it."

To the same effect see *Bauman v. Woodfield*, 244 Md. 207, 223 A. 2d 364 (1966).

The owner of a commercial garage was held to be without fault, in *Morrison v. Suburban Trust Co.*, 213 Md. 64, 68, 130 A. 2d 915 (1957), when a frequent visitor to his place of business tripped over the handle of an automobile jack protruding from the front of a car. Judge Hammond, who again spoke for the Court, said:

"This being so, Cobb [the owner of the garage] was under no obligation to warn against the occurrence of what should have been as apparent and foreseeable to Morrison as it was to him. Morrison, with his background and experience, must be charged under the circumstances and in the environment with the need of foreseeing what experience and familiarity with the premises and the business had taught him was, in all likelihood, apt to be encountered as he walked about, and Cobb is not to be charged with the failure to anticipate that Morrison would not measure up to his obligation."

It seems reasonable to conclude that there was nothing about Mazzarella's pit that was unknown to Finzel. His experience as a shovel operator in a strip mine pit was double that of Mazzarella. Having hauled coal for Mazzarella for 6 years, he was familiar with his operation. No trucking was done that day where he worked because "the roadway was falling in on us." It was raining "awful" when he dispatched Wilhelm to Mazzarrella's pit on that Monday morning. He knew where the truck was going and he was intimately familiar with the precise use it would be put to when it arrived there. When he, Mazzarella and Wilhelm went back to the pit he "had sorta figured what * * * [he] would see when * * * [he] got there." Al-

though Wilhelm had been working for him for only four months Finzel said he was familiar with the operation.

Mazzarella admitted that it was "too wet to work" and that it was "a bad day for a strip job." He conceded there was danger of falling rocks "especially when it rains and thaws" but, he pointed out, there was no "indication or warning," on 31 January 1966, that the spoil pile might slide. Had there been they "wouldn't have pulled in there." "It [had] never happened [before] when * * * [he] was loading a truck." In fact he "had never see one happen" but he did admit that on several occasions slides had occurred on his jobs during the night. He described the spoil pile as "normal" and "average" and he did not know of any way the slide could have been prevented.

Since we cannot say that Judge Hamill's verdict was clearly erroneous we shall not disturb the judgment below.

*Judgment affirmed.*
*Costs to be paid by the appellant.*