# WESTERN MARYLAND RAILWAY COMPANY v. GRIFFIS

[No. 256, September Term, 1968.]

*Decided May 28, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Joseph H. Young,* with whom were *Jesse Slingluff* and *Piper & Marbury* on the brief, for appellant.

*Charles B. Heyman,* with whom were *Solomon Kaplan* and *Berenholtz, Kaplan & Heyman* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

SS. Alcoa Polaris, owned by the Alcoa Steamship Company, arrived in Baltimore on Wednesday, 2 March 1960 and was

docked at Pier 9 at the Port Covington yards [1] of Western Maryland Railway Company (Western Maryland). Between 11 P.M. on Wednesday and 1 P.M. on Thursday, 3 March, 10 inches of snow had fallen. One-tenth of an inch fell early on Friday, 4 March. From 1 A.M. on Thursday until 8 A.M. on Saturday, 5 March, the temperature was never higher than 26° and had been as low as 18°.

For some eight years, Griffis, plaintiff below and appellee here, had been an oiler on the SS Alcoa Polaris, which had been calling at Baltimore once a month for two years, always docking at Pier 9. Griffis remained aboard ship until 8 A.M. on Saturday, 5 March, at which time he left the ship with the intention of picking up his vacation paycheck at the union hall and doing some shopping. He followed the route which he usually took when he went ashore "nearly every trip" when the ship was in Baltimore: he left by a midship gangway, turned to his right to walk along an apron to the end of the pier, crossed the pier, and started walking on the road which led to the McComas Street entrance of the terminal.

It was at this point that Griffis slipped and fell, breaking his hip and wrist. Griffis' suit against Western Maryland was tried before the Superior Court of Baltimore City (Harris, J.) and a jury. From a judgment entered on a jury verdict in Griffis' favor, Western Maryland has appealed, assigning as the basis for its appeal five rulings on evidential matters made by the trial court. We shall consider these in order, referring in each instance to such additional testimony as may be pertinent to the issue.

i

*Was there evidence in the case legally sufficient to entitle the plaintiff to a verdict against the defendant?*

Western Maryland argues that the trial court erred in refusing to grant its motions for a directed verdict at the end of the plaintiff's case, and at the end of the entire case, and its motion

---

1. Leased from the Mayor and City Council of Baltimore. It was stipulated that Western Maryland Railway Company was solely responsible for the maintenance of the leased premises.

for a judgment *non obstante veredicto,* all grounded on the reasons:

That there was no evidence legally sufficient to entitle Griffis to a verdict;

That the evidence failed to show any duty owed Griffis or any breach of duty by Western Maryland;

That the evidence failed to show that Western Maryland had any actual or constructive notice of the alleged hazardous condition; and,

That the evidence failed to show any primary negligence on the part of Western Maryland.

The duty owed by a landowner to business invitees, a class of which Western Maryland concedes that Griffis is a member, has been clearly defined in several recent cases. *Honolulu Ltd. v. Cain,* 244 Md. 590, 224 A. 2d 433 (1966) involved a suit for damages for injuries sustained by a customer who slipped on ice which had formed at a shopping center parking lot. In holding that there was sufficient evidence to go to the jury on the question of primary negligence, we said:

> "The duty of an occupant of land toward his business 'invitee' rested, in its inception, upon an implied representation of safety, 'a holding out of the premises as suitable for the purpose for which the visitor came * * *', Prosser, *Business Visitors and Invitees,* Selected Topics of the Law of Torts 243, 261 (1953). The word 'invitee' itself, conveys the idea that the place is held out to the visitor as prepared for his reception. The occupant does not, of course, become an insurer of the safety of those who accept his invitation. But when the public is led to believe that premises have been offered for its entry, the law is clear that the occupant assumes a duty of reasonable care to see that the place is safe for the purpose. The duty extends to those who are injured when they enter in response to the invitation.
>
> * * *
>
> "The Restatement of the Law of Torts, Second [1965] Sec. 343, sets forth the standards governing

the relationship of landowner and business invitee with respect to a hazardous condition. The landowner is subject to liability for harm caused by a natural or artificial condition on his land if (a) he knows or by the exercise of reasonable care could discover the condition, (b) he should expect that invitees will not discover the danger, or will fail to protect themselves against it, (c) he invites entry upon the land without (1) making the condition safe, or (2) giving a warning. These principles have been approved many times by this Court. *Yaniger v. Calvert Bldg. & Const. Co.,* 183 Md. 285, 289, 37 A. 2d 263, 265 (1944); *Evans v. Hot Shoppes, Inc.,* 223 Md. 235, 239, 164 A. 2d 273, 276 (1960); *Morrison v. Suburban Trust Co.,* 213 Md. 64, 130 A. 2d 915 (1957); *Glaze v. Benson,* 205 Md. 26, 106 A. 2d 124 (1954)." 244 Md. at 595-96

*Honolulu* has been cited with approval or followed in a series of snow and ice cases, including *Abraham v. Moler,* 253 Md. 215, 252 A. 2d 68 (1969); *Gast, Inc. v. Kitchner,* 247 Md. 677, 234 A. 2d 127 (1967); *Raff v. Acme Markets, Inc.,* 247 Md. 591, 233 A. 2d 786 (1967); *New Highland Recreation, Inc. v. Fries,* 246 Md. 597, 229 A. 2d 89 (1967); *Dorsch v. S. S. Kresge Co.,* 245 Md. 697, 226 A. 2d 899 (1967); *Weisner v. Mayor & Council of Rockville,* 245 Md. 225, 225 A. 2d 648 (1967).

It is interesting to note that Judge Harris, quite properly we think, incorporated the rule of Restatement, *Torts* 2d (1965), § 343 in his charge to the jury. There was evidence from which the jury could have found that Western Maryland expected pedestrians to use the road where Griffis fell, particularly since no pedestrian walkway was provided; that 21 men had spent 272½ man hours cleaning snow and salting ramps, aprons, downspouts and streets on Piers 7, 8, and 9 between 7 A.M. and 10 P.M. on Thursday, 3 March; and that no cleaning or salting of streets had been done between 10 P.M. on Thursday and 8 A.M. on Saturday, when Griffis fell, although there had been high winds, freezing temperatures, and a small amount of additional snowfall. There was also testimony

that the area where Griffis fell was covered with ice, although concealed by a light layer of snow, and that all of the roads in the terminal were free of ice and snow except for the particular section where Griffis fell. There was evidence to support a jury finding that Griffis saw the snow on the road, but did not see the ice which caused him to fall and had no reason to suspect that it was there. Whether Western Maryland knew or should have known of the dangerous condition was a jury question. *Blanco v. J. C. Penney Co.*, 251 Md. 707, 714, 248 A. 2d 645 (1968) ; *Stein v. Overlook Joint Venture*, 246 Md. 75, 227 A. 2d 226 (1967).

We conclude that there was sufficient evidence of primary negligence to take the case to the jury.

ii, iii

*Did the court err in refusing to direct a verdict for Western Maryland or at least in failing to instruct the jury on Griffis' assumption of the risk?*

The simple answer to this question is that the defense of assumption of the risk may be invoked only when the plaintiff intentionally exposes himself to a known danger or is held as a matter of law to have done so. *Compare Sachs v. Pleasant*, 253 Md. 40, 251 A. 2d 858 and cases there cited *with Finzel v. Mazzarella*, 248 Md. 227, 230, 235 A. 2d 726 (1967). *See Honolulu Ltd. v. Cain, supra*, 244 Md. at 600 ; *Velte v. Nichols*, 211 Md. 353, 127 A. 2d 544 (1956) and *Yaniger v. Calvert Bldg. & Const. Co.*, 183 Md. 285, 289, 37 A. 2d 263 (1944). There was no testimony that Griffis knew of the danger.

But even if this were not the case, the court's instruction on contributory negligence was broad enough to cover an assumption of the risk :

> "Secondly, I will instruct you as to the duty of the Plaintiff to protect himself by the exercise of reasonable care.
>
> "* * * I instruct you that if you find that the Plaintiff knew or by the exercise of reasonable care could have known of any hazardous condition and chose to take such a route with a hazardous condition existing there-

on and expose himself to such hazards, then that would be contributory negligence on his part and you would be bound to render your verdict for the Defendant.

"If you find that the Plaintiff knew or by the exercise of reasonable care should have known that he had a choice of two routes and further by the exercise of reasonable care that he should have known that one route was hazardous and one route was free of hazards, but chose to take the hazardous route with this knowledge and that his injury resulted from that action, then that would be contributory negligence on his part and you would be bound to render your verdict for the Defendant."

The line between contributory negligence on the one hand, and assumption of the risk, on the other, is a thin one. *Baltimore County v. State, use of Keenan*, 232 Md. 350, 193 A. 2d 30 (1963), and we have held that an instruction can cover assumption of the risk without using those words, if the question is presented to the jury on the court's charge. *Bull Steamship Lines v. Fisher*, 196 Md. 519, 529, 77 A. 2d 142 (1950). There was ample evidence to support a jury finding that Griffis did not understand the risk of harm to which he was exposed. *Honolulu Ltd. v. Cain, supra*, 244 Md. at 600.

iv

*Did the court err in defining what was the meaning of reasonable care required of Western Maryland in this case?*

Here, Western Maryland's challenge is directed against a portion of the court's charge given after it had instructed the jury on the rule of Restatement, *Torts, supra*, § 343:

"What I have said, however, does not mean that the land owner, which is the Western Maryland Railway, the Defendant in this case, must exercise the maximum care under all circumstances or that the Defendant was an insurer of the Plaintiff's safety. It means only that the Defendant must exercise reasonable care under all of the circumstances attendant to this particular case, considering all of the facts, such as the weather, the

time, and the opportunity for the Defendant to correct any unsafe condition and similar matters of that kind. If you find that the Defendant knew or by the exercise of reasonable care could have known of any unsafe condition as of the time that the Plaintiff fell on the morning of March 5th, 1960, at approximately 8:00 a.m., and failed to correct such unsafe condition, or if you find that the Defendant knew or by the exercise of reasonable care could have known of an unsafe condition, which would be unknown and unapparent to a business invitee using the roadway and failed to issue a warning of such unsafe condition, then you must find that the Defendant failed to exercise reasonable care to see that its property was reasonably safe for use by its business invitees."

We do not agree with Western Maryland's contention that since Western Maryland's duty to keep the roads clear of snow and ice was not even as great as that owed by a municipality, the "charge imposed on the defendant a duty far in excess of the general rule," citing *Weisner v. Mayor & Council of Rockville,* 245 Md. 225, 225 A. 2d 648 (1967) and *Mayor & City Council of Balto. v. Marriott,* 9 Md. 160 (1856). This argument has the flavor of the Massachusetts Rule as to the landlord's responsibility for the removal of snow and ice, *Woods v. Naumkeag Steam Cotton Co.,* 134 Mass. 357, 45 Am. Rep. 344 (1883) ; *Spack v. Longwood Apts., Inc.,* 338 Mass. 518, 155 N.E.2d 873 (1959), onto which the municipality standard was engrafted in New York in *Dwyer v. Woollard,* 199 N.Y.S. 840 (1923). We rejected the Massachusetts Rule in *Langley Park Apts., Sec. H., Inc. v. Lund,* 234 Md. 402, 409-10, 199 A. 2d 620 (1964) and adopted the Connecticut rule as applicable to accidents occurring on common approaches. A different standard is applied to municipalities, *Weisner v. Mayor & Council of Rockville, supra,* 245 Md. 225, 235, and to owners of property which abut on public sidewalks. *New Highland Recreation, Inc. v. Fries, supra,* 246 Md. 597 ; *Dorsch v. S. S. Kresge Co., supra,* 245 Md. 697 ; Restatement, *Torts, supra,* § 349.

Nor do we agree that the court erred in refusing to delineate

between an owner's responsibility with respect to large areas as contrasted with small areas, with respect to interior spaces as distinguished from roads, or between the maintenance of a roadway in a ship terminal and of a parking lot in a shopping center.

As we see it, the court's charge, on balance, was a correct statement of the law, and under it, the jury could have, and probably did, take into consideration the very points which Western Maryland stresses.

As we pointed out in *Raff v. Acme Markets, Inc., supra,* 247 Md. 591, 598, it was Western Maryland's duty not only to eliminate the obvious hazards, but to seek out and correct those not readily apparent. In *Raff,* we quoted with approval the statement of the Colorado Court in *King Soopers, Inc. v. Mitchell,* 140 Colo. 119, 342 P. 2d 1006 (1959):

> "Our cases also recognize that the landowner, in discharging his duty to a business visitor, is obligated to exercise reasonable care to *discover* perils [citing cases]. This duty of discovery is not satisfied by the simple expedient seemingly followed here of ignoring the hazard." 342 P.2d at 1009

What we said in *Raff* is especially apposite here:

> "In the circumstances here present, we think Acme [the landowner] was under an obligation to exercise reasonable care to discover the hazardous condition of the ramp. There can be little doubt that the condition of the ramp, at least as to the ice, existed when Acme's agents reported for duty on Saturday morning and that it remained virtually unchanged until Mrs. Raff fell. After a week of unseasonably cold weather (7 to 17 degrees below normal) and in light of the freezing temperatures then prevailing, reasonable care would seem to have required a cursory inspection, at least, of the 'sidewalk' and the ramps. Even a knowing glance through the front door would have resulted in the discovery of snow on the ramp. If there had been no

snow then the ice would have been visible. A little sand or salt could have mitigated and perhaps eliminated the hazardous condition." 247 Md. at 598

Western Maryland would have us hold that the standard of care with which a landowner is chargeable may vary with the use to which the property is put, citing Restatement, *Torts, supra,* § 343, Comment e:

> "* * * [If a business invitee goes] into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory." at 217

and *Morrison v. Suburban Trust Co.,* 213 Md. 64, 130 A. 2d 915 (1957) (Plaintiff fell over jack handle on floor of commercial garage); *Elzey v. Boston Metals Co.,* 189 Md. 566, 56 A. 2d 692 (1948) (Plaintiff, going through dark passage of ship being dismantled, fell through an open hatch); and *Riganis v. Mottu,* 156 Md. 340, 144 A. 355 (1929) (Plaintiff, inspecting lumber in a lumber yard, was injured when defective railing gave way). We are not prepared to say that such a principle can be invoked under the facts before us. It seems to us that when Western Maryland suggested that a road be used by its business invitees by posting a sign indicating that this was the way to Pier 9, and provided no pedestrian sidewalks, there is but one standard of care, as applicable to a road used as a pedestrian walkway in a sprawling terminal facility as it is to a shopping center or an apartment house driveway. *Compare Raff v. Acme Markets, Inc., supra,* 247 Md. 591 and *Honolulu Ltd. v. Cain, supra,* 244 Md. 590 *with Abraham v. Moler, supra,* and *Langley Park Apts., Sec. H., Inc. v. Lund, supra,* 234 Md. 402.

v

*Did the lower court err when it declined to admit the testimony of Franklin Beard?*

Mr Beard, an employee of Western Maryland, testified that he was employed at Port Covington at the time of the accident. He was asked:

"Q And are you familiar with the method that was available for snow removal work?

"A Yes, sir.

"Q I don't mean necessarily [at] Western Maryland, but generally the work facilities that are available and the procedures that are followed?

"A I am familiar with the equipment that we use on the Western Maryland snow removal at Pier 7, 8 and 9.

"Q And what would be your opinion as to the work that was done by Western Maryland in snow removal as compared with the usual practices that are involved in the area?

Mr. Heyman [counsel for Griffis] : Objection, Your Honor.

The court : Sustained."

We have held that proof that a defendant conformed to the standards of his industry is often weighty evidence that the act in question is reasonable and non-negligent, but that it is not necessarily conclusive. *Honolulu Ltd. v. Cain, supra,* 244 Md. at 598; *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961). The difficulty here is that Beard's qualifications, as elicited by the questions, only reached the equipment used by Western Maryland. We have long held that the custom and practice of a party, as distinguished from general custom and practice, is inadmissible since it is not helpful in a determination of what constitutes reasonable care. *Chesapeake & Potomac Tele. Co. v. State, use of Carey,* 124 Md. 527, 93 A. 11 (1915) ; *Consolidated Gas Electric Light & Power Co. v. State, use of Smith,* 109 Md. 186, 201-02, 72 A. 651 (1909) ; *Baltimore & Ohio R. R. Co. v. Shipley,* 39 Md. 251, 255 (1874).

We find no error in the court's having sustained the objection to the question asked Mr. Beard. Since Western Maryland made no formal proffer of what his testimony would have been, we can only assume that it would have been confined to Western Maryland's practices.

A consideration of the lower court's instructions as a whole convinces us that the law was fairly and completely covered by

the charge. *Gast, Inc. v. Kitchner, supra,* 247 Md. 677, 688; *Lloyd v. The Yellow Cab Co.,* 220 Md. 488, 495, 154 A. 2d 906 (1959); *West v. Belle Isle Cab Co.,* 203 Md. 244, 251, 100 A. 2d 17 (1953); *Bull Steamship Lines v. Fisher, supra,* 196 Md. 519, 529. Finding no error, we shall affirm.

*Judgment affirmed; costs to be paid by appellant.*