833 A.2d 17

DEERING WOODS CONDOMINIUM ASSOCIATION et al.

v.

Margaret F. SPOON.

No. 123, Sept. Term, 2002.

Court of Appeals of Maryland.

Oct. 6, 2003.

252

---

David H. Bamberger (Edward S. Scheideman of Piper Rudnick, L.L.P., on brief), Washington, DC; Roger O. Robertson (Law Offices of Joseph M. Jagielski, on brief), Baltimore, for Petitioners.

Paul J. Weber (Joseph M. Alden of Hyatt, Peters & Weber, L.L.P., on brief), Annapolis, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

RODOWSKY, Judge.

This slip on ice and fall case was brought against the condominium where the plaintiff resided, its management company, and against Columbia Association, Inc. (CA), the owner of adjoining land where the accident occurred. Summary judgments entered in favor of each defendant by the Circuit Court for Howard County were reversed by the Court of Special Appeals in an unreported opinion. This Court issued the writ of certiorari, primarily to determine whether a provision in the condominium bylaws effected a waiver of the plaintiff's claim. We find it unnecessary to answer that question because, as the trial court concluded, there is no legally sufficient evidence of constructive notice as to any defendant.

### The Facts

The accident involved here occurred in the unincorporated city of Columbia in Howard County. CA, one of the petitioners, is a non-profit corporation which offers cultural, recreational, and community services programs to the residents of Columbia. CA owns about 3,000 acres of open space where it provides such amenities as pathways, bridges, playgrounds, and play areas. The open space basically is in stream valleys. The developed areas in Columbia, whether residential or commercial, eventually drain into one of the CA-owned stream valleys. Deering Woods Condominium Association (Condo), another petitioner, owns a residential condominium at 5665, 5667, and 5669 Harpers Farm Road in the Village of Harpers Choice, Columbia. The third petitioner, First American Management, Inc. (Mgmt. Co.), at all relevant times managed Condo.

Margaret F. Spoon, the respondent (Ms. Spoon), purchased Unit E in Condo's building at 5669 Harpers Farm Road in

March 1992 but, due to employment overseas, did not begin uninterrupted residence there until March 1996.

Behind Condo's property is one of the stream valleys. Running parallel with the stream is an asphalt paved pathway, approximately six feet wide. The pathway is accessible from Condo by a sidewalk, which includes a flight of stairs, leading down to intersect the pathway. The area along the pathway and streambed is wooded. A person who has descended the stairway from Condo and turned to the left as one faces the streambed, walks in a short time to the place where the subject accident occurred (the Site). Roughly on a direct line drawn perpendicularly to the stream and running through the Site up the hillside to the elevation of Condo's buildings is Condo's parking lot. Surface water from that parking lot is collected and discharged through an outfall pipe into a drainage ditch filled with riprap. The drainage ditch extends down the hill and across the property line between the land owned by Condo and that owned by CA. The ditch or swale extends on the CA property approximately ten feet from the boundary to the side of the asphalt pathway. Water from the drainage ditch then passes, or was intended to pass, over the top of the pathway and to the stream.

The subject accident occurred on the morning of Sunday, January 12, 1997. Climatological data recorded at Baltimore–Washington International Airport reflects the following conditions there.[1]

---

**1.** That airport is roughly ten to twelve miles from the center of Columbia. In the chart set forth below "M" means missing data and "T" means trace.

| Date | Maximum Temperature F | Minimum Temperature F | Snow on Ground (Depth in Inches) | Snowfall Precipitation (Inches) |
|------|------|------|------|------|
| Jan. 9 | 33 | 27 | M | 2.4 |
| Jan. 10 | 41 | 26 | 1.0 | .6 |
| Jan. 11 | 32 | 18 | 2.0 | 2.0 |
| Jan. 12 | 26 | 14 | T | — |

At about 8:30 a.m. on January 12 Ms. Spoon took her dog for a walk, using her usual route which did not include the Site. Indeed, Ms. Spoon, prior to the accident, had never been to the Site. She was "afraid to go down in there" because she had known that "they had caught people down there" who had been "[a]ttacking or whatever." The walkways and parking lot on her usual route were clear, although there was snow on the untreated areas. Because her dog had not done its "business," Ms. Spoon decided to extend their walk. She went down the sidewalk to the stairway that descends toward the stream. The sidewalk and stairs had been cleared, and the stairway had been sanded.[2] The pathway that runs parallel with the stream had also been cleared of snow. Ms. Spoon, who was wearing snow boots, tested the surface of the pathway at the foot of the stairs and concluded that the pathway was free of ice. She walked along the path to the Site where she slipped on black ice and fell, sustaining bodily injuries.[3]

Ms. Spoon filed the instant action. By a scheduling order, the circuit court established dates for the close of discovery and for the filing of dispositive motions. Summary judgment motions were filed by Condo, Mgmt. Co., and later, with leave

---

**2.** A contractor, Greenlink, Incorporated, which had snow plowing and snow shoveling agreements with Condo, had performed plowing, shoveling, salting, and sanding operations on January 9, 10, and 11, 1997, at Condo's premises.

**3.** At her deposition, no one asked Ms. Spoon to estimate the area of the ice patch.

of court, by CA.  The summary judgment record, insofar as it is relevant to any negligence of the petitioners, consists primarily of the depositions of Ms. Spoon and of Dennis Ellis (Ellis), the construction manager for CA.

At the time of his deposition in May 2000, Ellis had worked for CA for about twenty-eight years, fifteen of which as construction manager.  He testified that there was nothing unusual about having surface water flow across CA open space to streams and that there were "literally thousands" of such crossings in Columbia.  Ellis placed the construction of the subject pathway to "probably before" 1970.  The drainage ditch was dug by the developer of Condo's premises.  Ellis placed that work as having been done in the late 1970s or early 1980s.  He had found a site plan showing an easement area over CA property at the Site for surface water in concentrated form from Condo's premises, but there is no recorded easement agreement.

At unspecified distances from the Site, on each of the upstream and downstream sides, there are also drainage ditches.  At those two locations, in lieu of having surface water pass over the pathway, the runoff travels under the pathway through a culvert and to the stream.  Ellis explained that over-the-surface drainage is used

"where the swale, basically, terminates at the pathway itself and the water is expected to drain across the pathway.  And you want to make sure that you have positive drainage and that the pathway is tilted in such a way that the path—that the water runs across it and doesn't run back with a puddle of water and that sort of thing."

By positive drainage he means the absence of "ponding."  In post-accident inspections of the Site, Ellis did not make any determination as to whether there was positive drainage "because it was basically dry conditions every time [he had] seen it and it looked pretty normal to [him]."

Ellis was not aware of any complaints to CA that there was not positive drainage flow over the pathway at the Site; he was not aware that anyone, other than Ms. Spoon, had fallen

on the pathway in the area behind Condo's property; and he had no knowledge of any complaints about accumulations of ice on the pathway behind Condo's property.

Ellis was asked what measures, other than constructing a culvert, could be taken if the determination were made that "there is not a positive flow of water across the surface of the path." He responded that one method might be a "raised boardwalk or bridge situation" and another is to alter the grading and manipulate the direction of water. He further commented that he thought there was a physical impediment to the use of a culvert at the Site, because there is a manhole in the pathway for accessing a sanitary sewer under the pathway.

Ms. Spoon did not produce any expert opinion contradicting Ellis's views. Nor did she produce evidence of any complaints whatsoever or other form of actual notice to any petitioner about water ponding or ice formation at the Site.

### The Procedural History

Ms. Spoon's complaint alleged that the petitioners had a duty "to use reasonable and ordinary care to maintain, manage and control the [Site] and to keep the [Site] safe from unreasonable risk of harm to [her]." This duty was breached, she alleged, by, *inter alia,* failure properly to drain the Site and negligently allowing a layer of ice "to remain atop the pavement on the [Site]."

Condo moved for summary judgment, raising only a defense of waiver of claim by Ms. Spoon based upon a provision in Condo's bylaws. At the same time, Mgmt. Co. moved for summary judgment, asserting as its sole ground that it had no obligation to clear ice or snow from CA property. When CA filed its motion for summary judgment it argued, *inter alia,* that there was no evidence that it had knowledge of any ice on the pathway. Ms. Spoon filed a written opposition to CA's request for leave to file the motion for summary judgment after the scheduling order deadline. Awaiting a ruling on that

opposition, she did not respond to the merits of the tendered motion.

At a hearing on all of the motions for summary judgment, Condo and Mgmt. Co., who were both represented by the same counsel, argued that "[b]oth motions are found[ed] upon two basic principles.... First, there is the lack of any duty. Second, there is the lack of any notice." Next CA argued its motion for summary judgment, submitting that there was an absence of notice and that it "cannot be everywhere, all the time, to make sure that every drop of water doesn't become ice." Ms. Spoon responded.[4] She argued that one could infer from the absence of ice along the pathway between the stairs and the Site that the ice on which she fell had formed from runoff from the drainage ditch. The court inquired, "Okay. But how does that address the notice issue?" In reply Ms. Spoon argued that, because workers had cleared snow from the stairs and the pathway, a fact finder could reasonably infer that the ice at the Site was observed, or should have been observed. Ms. Spoon then addressed other issues, *e.g.*, pleading waiver, the construction of the bylaws, and her status on the CA land. The court interrupted, saying:

> "But what, I guess, I'm just trying to understand your arguments as to the notice issue, because I think that that's a big issue. Are you suggesting that the only evidence that you would be presenting ... is the fact that there was snow removal being conducted on that date or close to that date[?]"

Ms. Spoon's answer was that Ellis "was not the only person, or even the most immediate person who would have received, been fielding those complaints, and that there may be other people at [CA] who would be—could speak more accurately to" the issue of notice. The following colloquy then ensued:

---

4. When addressing CA's arguments, Ms. Spoon noted that CA's motion for leave to file its motion had not been ruled upon expressly. Thereupon, the court granted leave on the record, after referring to some prior and apparently off-the-record discussions resulting in the court's setting the merits of the summary judgment motions for the hearing then being conducted.

"THE COURT: Well, who is going to do that? I mean discovery is closed, right?

"[MS. SPOON'S COUNSEL]: Discovery is closed.

"THE COURT: I mean who is going to present that testimony. I mean that's something that is pretty essential to be presented.

"[MS. SPOON'S COUNSEL]: Well, there were other people identified in responses to our discovery requests as representatives of Columbia Association. We would intend to call them at trial.

"THE COURT: No, but who do you have that is going to say that there was—I mean, how are you going to establish constructive notice? I think there is no disagreement you don't have actual notice. How are you intending—I mean that's the gist as I understand it. That's probably the primary gist to the argument."

Ms. Spoon then returned to her argument that people working for at least one of the defendants in clearing snow should have realized that there was ice, in addition to snow, on the pathway at the Site.

The court ruled from the bench, reasoning as follows:

"I think that the problem we have is that although perhaps [the plaintiff's] theories are not flawed, they're, at this point with discovery being closed, there just isn't evidence to support what the plaintiff is alleging in this case."

Taking up the particular motions in the order in which they had been argued, the court said:

"I will grant ... defendant First American Management, Inc.'s motion for summary judgment, I will grant that for the reasons advanced by the management company. Also the defendant [Condo's] motion for summary judgment as to the waiver issue, I will grant that."

With respect to CA's motion the court said:

"But I will grant [CA's] motion for summary judgment. I just don't find that there are any disputes as to any material facts and that judgment should be granted."

Ms. Spoon did not move to revise any of the judgments; she appealed to the Court of Special Appeals. In her brief to that court she argued, *inter alia,* that "[i]n granting [Condo's and Mgmt. Co.'s] summary judgment motions, the trial court erroneously considered and relied upon arguments of counsel pertaining to 'lack of notice,'" because, she said, those grounds had not been raised in the written motions. She further argued that a jury reasonably could infer that "appellees knew or had reason to know that . . . icy conditions might result from the water flowing over the [Site]." In addition to the alleged failure to remove, salt, or sand the ice, Ms. Spoon submitted that the petitioners were negligent in failing to build a footbridge over the pathway at the Site, or to alter the drainage by grading. Those were alternatives that Ellis had testified might be employed, *if there were ponding at the Site.*

In their joint brief to the Court of Special Appeals, Condo and Mgmt. Co. argued waiver of claim, lack of duty to persons off of Condo premises, and no evidence of notice that there was any ice or ponding at the Site. CA, when addressing the substantive merits, argued exclusively lack of notice of ice or ponding at the Site.

The Court of Special Appeals read the circuit court's ruling to be that "[s]ummary judgment was granted to [Condo] *solely* on the ground that [Ms. Spoon] had waived any cause of action she had against the condominium." (Emphasis added). Concluding that there had been no legally effective waiver, the intermediate appellate court reversed as to Condo. With respect to CA the appellate court accepted Ms. Spoon's argument that "the appellees were aware, or should have been, of the possibility of water draining from [Condo's] parking lot flowing over its pathway, and possibly freezing there." (Footnote omitted). This was held legally sufficient "to give rise to a duty to warn [Ms. Spoon] or to make the pathway safe." The Court of Special Appeals reversed as to Mgmt. Co. because that court considered that "[t]he only reason advanced by [Mgmt. Co.] was that . . . it had no duty to clear ice on property belonging to [CA]." Consequently, said the appellate court, Mgmt. Co. "did not present any evidence, or

advance any legal argument in response to [Ms. Spoon's] position that [Mgmt. Co.] was liable in negligence for creating and maintaining the drainage ditch on [Condo's] property." The claim was remanded to the circuit court for consideration of that issue in the first instance.

Condo and Mgmt. Co. jointly petitioned this Court for certiorari, presenting but one question, namely, the correctness of the intermediate appellate court's rejection of the waiver defense. In its petition for certiorari, CA relied upon the absence of evidence to support finding constructive notice. Petitioners' briefs in this Court fleshed out the outlines of their respective certiorari petitions. Responding to CA's brief in this Court, Ms. Spoon reiterated her notice arguments which assumed there had been a positive flow problem at the Site. She asserted, *inter alia*, that CA "failed to employ other alternatives for addressing the 'positive flow' problem, such as a wooden boardwalk or bridge, or grading changes." She also argued that she had been denied a proper opportunity to file an affidavit from an expert in opposition to CA's motion for summary judgment.

## I

### A

We address first whether summary judgment was properly granted in favor of CA. The accident occurred on its land, and the alleged dangerous condition, *i.e.*, ice formed at the interface between the swale and the pathway, was on its land. Further, Ms. Spoon was a "public invitee," namely, "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." 2 Restatement (Second) of Torts § 332(2) (1965) (Restatement). *Cf. Casper v. Charles F. Smith & Son, Inc.*, 316 Md. 573, 579, 560 A.2d 1130, 1134 (1989) (declining to decide if user of park land, intentionally held in its natural state, was an invitee).

The general rule regarding the liability of possessors of land to invitees is set forth in Restatement § 343, which this Court

has quoted with approval. *See Western Md. Ry. Co. v. Griffis,* 253 Md. 643, 646–47, 253 A.2d 889, 891–92 (1969); *Honolulu Ltd. v. Cain,* 244 Md. 590, 596, 224 A.2d 433, 436 (1966). Section 343 reads:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

█ The rationale for the rule is that

"an invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation."

Restatement § 343, cmt. *b.*

█ An appellate court, when reviewing the grant of a motion for summary judgment, ordinarily is limited to the grounds relied upon by the circuit court. *Blades v. Woods,* 338 Md. 475, 478, 659 A.2d 872, 873 (1995). In the instant matter, although the circuit court did not articulate its reasons when it formally granted CA's motion, the only defense argued by CA was the lack of constructive notice. Indeed, the circuit court's colloquy with Ms. Spoon's counsel makes plain that that defense was of principal interest to the court. Consequently, we consider whether there was sufficient evidence of constructive notice to generate a triable issue as to CA.

In *Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436 (1936), this Court listed some of the factors bearing on constructive notice.

> "It is not necessary that there be proof that the inviter had actual knowledge of the conditions creating the peril; it is enough if it appear that it could have discovered them by the exercise of ordinary care, so that, if it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them. What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions."

*Id.* at 551, 182 A. at 440 (citations omitted).

Among the factors which determine the extent of safety preparation that an invitee is entitled to expect, "the nature of the land and the purposes for which it is used are of great importance." Restatement § 343, cmt. *e.* That comment is illustrated by the following comparison:

> "[O]ne who goes on business to the executive offices in a factory[ ] is entitled to expect that the possessor will exercise reasonable care to secure his visitor's safety. If, however, on some particular occasion, he is invited to go on business into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory."

*Id.*

Whether a condition on the possessor's land is one which the possessor should know involves an unreasonable risk of

harm to invitees is closely related to, if not indistinguishable from, the extent of the possessor's duty to inspect, at least in cases in which the claimant relies on constructive notice. In cases dealing with business invitees, including tenants, this Court has held that the possessor's duty to exercise reasonable care includes protecting against unreasonable risks of harm resulting from naturally occurring accumulations of snow and/or ice on walkways intended for the invitee's use. *See Langley Park Apartments, Sec. H., Inc. v. Lund, Adm'r,* 234 Md. 402, 409–10, 199 A.2d 620, 624 (1964) (landlord and tenant); *Griffis,* 253 Md. at 647–48, 253 A.2d at 891–92 (business invitee).

When reversing the circuit court in the case before us, the Court of Special Appeals relied on *Honolulu Ltd. v. Cain,* 244 Md. 590, 224 A.2d 433, a case in which the nature of the premises and the purpose of the implied invitation were substantially different from those factors in the instant matter. Honolulu Ltd. owned a shopping center which had been built in 1954 at the intersection of Loch Raven Boulevard and Taylor Avenue in Baltimore County. The stores formed a backwards "L," with the ninety degree angle in the southeast corner of the property. Stores along the south side of the "L" opened to the north, and stores along the east side of the "L" faced to the west. The balance of the property was an open-air parking lot. One-half inch of snow had fallen on February 10, 1964, nine inches on February 11, and seven inches more on February 18 and 19. At the direction of Honolulu Ltd., a contractor had kept the parking lot cleared by piling the accumulated snow in the northwest corner of the property. The only drain for melted snow, however, was in the southeast corner of the property. On February 27 the plaintiff, after leaving one of the stores at about 7:30 p.m. to return to her automobile, slipped and fell on a thin glaze of ice on the black macadam surface of the parking lot. It further appears that the ice had formed only fifteen or twenty minutes before the accident. *Id.* at 598, 224 A.2d at 437.

In affirming judgment on a jury verdict for the plaintiff, this Court did "not find it necessary to pass upon the issue of

whether the defendant could be held negligent in allowing the flow of water from one end of the lot to the other." *Id.* at 596, 224 A.2d at 436. There was, however, sufficient evidence of negligence in the owner's having directed the contractor to pile accumulated snow in an area where there were not sufficient drains to catch the melted snow. *Id.* In addition, "having knowledge of the dangerous condition it had created, the defendant could have been held to have been also negligent in not sanding or salting the wet area formed by the melting snow." *Id.* at 597, 224 A.2d at 436. Indeed, although aware that the water on the parking lot could freeze after darkness in February, and although the shopping center's maintenance person was instructed to salt sidewalks and any ice patches on the parking lot, the owner had sent the maintenance person home at 5:00 p.m. on the date of the accident. *Id.*

In most of the Maryland appellate decisions that have involved pedestrian falls on ice or snow and in which possessor liability was found, the accident occurred on business premises. The setting in *Raff v. Acme Markets, Inc.*, 247 Md. 591, 233 A.2d 786 (1967), was a supermarket at 1:00 p.m. on Saturday, January 5, 1963. Despite there having been no rain or snow for five days preceding the accident, a ramp at the curb in front of the supermarket was still covered with ice and snow. A directed verdict for the supermarket was reversed, and a new trial ordered. In *Griffis*, 253 Md. at 645, 253 A.2d at 890, the plaintiff was a member of the crew of a ship which had docked on Wednesday, March 2, 1960, at one of the defendant's piers. Beginning late Wednesday night and continuing until 1:00 p.m. on Thursday, ten inches of snow had fallen, and an additional one-tenth of an inch had fallen on Friday. The defendant's employees had expended 272-1/2 hours in cleaning snow and salting on the pier where the defendant's vessel was moored and on two adjoining piers. On Saturday morning, at about 8:00 a.m., the plaintiff left the vessel and followed his usual route to a public street. Having traversed the pier, and while walking on a segment of the defendant's roadway leading to the public street, he fell on ice

which was covered with a light layer of snow. "[A]ll of the roads in the terminal were free of ice and snow except for the particular section where Griffis fell." *Id.* at 648, 253 A.2d at 892. Under these circumstances, this Court held that whether the defendant should have known of the dangerous condition was a jury question. *Id.; see also Abraham v. Moler,* 253 Md. 215, 218–19, 252 A.2d 68, 69–70 (1969) (affirming judgment for plaintiff tenant where, on the day preceding the accident, six and one-half inches of snow had fallen and had been piled to a height of two and one-half feet on either side of the driveway in front of the entrance to plaintiff's apartment house, so that melting snow flowed across driveway and froze).

In *Langley Park Apartments v. Lund,* 234 Md. 402, 199 A.2d 620, 4.9 inches of snow had fallen on February 13, 1960, and 1.3 inches more on the 14th. At about 10:30 p.m. on the third day following the last snowfall, the plaintiff, a tenant of the defendant, fell on ice on a walkway which had never been cleared. A judgment for the plaintiff was affirmed. *Id.* at 410, 199 A.2d at 624. *Langley Park Apartments* may be contrasted with *Reitzick v. Ellen Realty, Inc.,* 30 Md.App. 273, 352 A.2d 327 (1976). In that case about three inches of snow had fallen on November 12, 1968, which the defendant landlord had caused to be removed by 8:00 a.m. the next morning. When returning to her apartment after midnight of November 13–14, the plaintiff fell on ice on one of the defendant's sidewalks. The Court of Special Appeals concluded that *Honolulu Ltd.* was inapplicable and affirmed a directed verdict for the landlord. *Id.* at 276–78, 352 A.2d at 329–30.

In the instant matter Ms. Spoon contends that CA had reason to know that, despite snow removal from the pathway, water might accumulate at the Site and, depending on the winter temperature, freeze. But the uncontradicted evidence is that for approximately 20 winters there have been no complaints about ice, or accidents on ice, or ponding, at the Site. The two inches of snow that fell on Saturday, January 11, 1997, had been cleared from the pathway. There is no basis in the evidence for concluding that CA should have

known of black ice on the pathway at the Site sufficiently prior to Ms. Spoon's accident to have removed the ice or to have treated the surface by sanding or salting. There is neither lay testimony nor expert opinion that the Site was in any way unique in comparison to the "literally thousands" of crossings in Columbia where surface water flows over CA open space to streams. More particularly, there is no evidence of repeated ponding at the Site that may or may not have permitted a jury to infer, without expert opinion in support, that constructing a bridge or regrading was reasonably required, prior to this one accident, in order to prevent reoccurrences of a dangerous condition.

Indeed, the instant case is a stronger one for CA than was the case for the defendant in *Telak v. Maszczenski*, 248 Md. 476, 237 A.2d 434 (1968), where a directed verdict for the defendant was affirmed. The claimant was a social guest who had been injured while diving into the defendant host's swimming pool. The plaintiff contended the defendant should have known that the pool was too shallow, but this Court pointed out that, after more than two full seasons of use without any untoward incidents, there was no evidence that the host should have known that the swimming pool would be dangerous for its intended use. *Id.* at 486, 237 A.2d at 439.

Because CA performs in Columbia many of the recreational functions which are performed by municipalities that can afford to do so, the most analogous decision of this Court to the facts of the instant matter is *Weisner v. Mayor & Council of Rockville*, 245 Md. 225, 225 A.2d 648 (1967).[5] In that case the accident occurred on February 17, 1961, when the plaintiff was walking her five year old daughter to kindergarten at a public elementary school. In February 1961 there had been

---

**5.** *Columbia Park & Recreation Ass'n v. Olander*, 287 Md. 1, 410 A.2d 592 (1980), held that, because the appellant was not a governmental body, it was not entitled to have a court render a declaratory judgment, under *Reyes v. Prince George's County*, 281 Md. 279, 380 A.2d 12 (1977), in a collusive suit brought to obtain a decision on the extent of the appellant's power, under restrictive covenants, to assess property in Columbia in order to finance, *inter alia,* the park system there.

three snowfalls, the last on February 12, which had been cleared from streets and sidewalks resulting in banks of snow, piled to a height of up to three feet, between the vehicular and pedestrian ways. The plaintiff fell on a thin sheet of ice on the sidewalk in front of her daughter's school. Ice apparently had formed as a result of a cycle of thawing during the day and freezing at night. This Court affirmed a directed verdict in favor of the municipality. *Id.* at 235, 225 A.2d at 653. In reaching that decision, we quoted with approval the concurring opinion in *Jennings v. United States,* 291 F.2d 880 (4th Cir.1961), that was filed by Chief Judge Sobeloff, a former Chief Judge of this Court. In discussing the Maryland cases involving accidents caused by snow, ice, or slippery conditions, he said:

> " '[I]t would appear from [*Baltimore v. Marriott,* 9 Md. 160 (1856)] that if a defendant, whether an individual or a municipality, knew or should have known of such a condition on a way under his control, and did not take sufficient precautions to prevent it, he is liable. This would place an extremely heavy burden on persons and governmental bodies today, with the great number of streets and highways, the size of municipalities, the ever increasing volume of automobile travel, and the problems connected with snow and ice removal. Recognizing this, subsequent Maryland cases, against both private individuals and municipalities, have limited a defendant's liability for snow, ice, or slippery conditions.' "

*Weisner,* 245 Md. at 232, 225 A.2d at 652 (quoting *Jennings,* 291 F.2d at 889). *Weisner* held that a jury could not reasonably infer "that the municipality knew or should have known[ ] that a thin sheet of ice was forming on this specific sidewalk, in the early morning hours, as a result of the freezing of water which was draining from the adjacent snowbanks and that this rendered the sidewalk in question more perilous than sidewalks generally throughout the municipality." *Id.* at 232–33, 225 A.2d at 652. We said that applying constructive notice to the facts in that case "would result in the exposure of the

municipality to an unreasonable and unrealistic norm of liability." *Id.* at 233, 225 A.2d at 652.

We recognize that CA is not a municipality; nevertheless, the task of maintaining miles of pathways through 3,000 acres of parkland is probably a task greater than that faced by most municipalities in Maryland. The nature of the premises in this case is a pathway through the woods to be used by walkers, joggers, and, perhaps, bicyclists. The ice on which Ms. Spoon fell may have formed during the night preceding the accident, so that only continuous inspections by CA would have discovered it. In a case involving the fall by a business invitee on grease in a commercial garage, we said, "It may well be that a garage keeper should anticipate that oil or grease may occasionally leak from parked cars, but he is not an insurer and we think it would be unreasonable to hold that it is his duty to continuously inspect and sand down any and all leakage as soon as it occurs, even if we assume that periodic inspections are necessary." *Lexington Market Auth. v. Zappala*, 233 Md. 444, 446, 197 A.2d 147, 148 (1964). Given the nature of the premises in the case before us, CA, after having removed the most recent snowfall the day before the accident, had no duty continuously to inspect and was not on constructive notice of the allegedly dangerous condition.

## B

Ms. Spoon further contends that she "never received a proper opportunity to file a Response to [CA's] Motion for Summary Judgment with a supporting affidavit from" her expert, whom she had identified in discovery. Brief of Respondent at 29. She says that her expert was never deposed by the petitioners and that he "would have addressed the issues" raised by CA in its motion.

We do not fault Ms. Spoon for deferring her response to CA's motion, pending a ruling on her opposition to its being filed out of time. Nevertheless, when the circuit court, at the motions hearing, granted leave to CA, Ms. Spoon responded, "I anticipated that that was going to be the case based on the

nature of your decision."[6] She also reserved the right to respond more fully, saying: "And I don't know if the court would prefer for us to submit a brief after today or not?" The court responded, "If you can address it now, that's fine." Ms. Spoon proceeded orally to argue in opposition to the motion. She did not request that the record be left open to give her an opportunity to file an affidavit from her expert. We perceive no abuse of discretion in the trial court's allowing CA's motion to be filed and heard. Further, Ms. Spoon had the right, of which she did not avail herself, to file a motion to revise within ten days after the entry of the judgment.

At oral argument in this Court, when pressed to demonstrate where a proffer of her expert's anticipated testimony appeared in the record, Ms. Spoon pointed to a portion of her oral argument in the circuit court where she reviewed Ellis's deposition testimony. She said that Ellis's "testimony is going to be completely consistent in that regard of what our expert is going to say. And I'll just proffer that today." Consequently, even if there were procedural error in handling the opposition to CA's motion for summary judgment, there is no prejudice.

## II

We turn now to the liability of Condo and Mgmt. Co. The only question presented in their joint petition for certiorari concerned the construction and application of the waiver of claim bylaw provision. It is unnecessary, however, that we decide that issue.

We do not agree with the Court of Special Appeals that waiver of claim was the sole ground of decision by the Circuit Court for Howard County as to Condo, and it was not the ground of decision by the circuit court as to Mgmt. Co. The circuit court expressly granted summary judgment for "the reasons advanced" by Mgmt. Co. These included lack of constructive notice. The circuit court then said, "Also the

---

**6.** See note 4, *supra*.

defendant [Condo's] motion for summary judgment as to the waiver issue, I will grant that." We read this ruling to be an additional ground for the grant of summary judgment in favor of Condo, over and above lack of constructive notice, and not to be a limitation of the ground of decision to the waiver of claim provision alone.[7] Inasmuch as there is no difference in the evidence or legal relationships between the positions of Mgmt. Co. and Condo with respect to the lack of constructive notice defense, there would be no reason for the trial court to rely on lack of notice as to Mgmt. Co. and then to exclude that as a ground of decision as to Condo. Lack of constructive notice as the ground of decision as to Condo is also completely consistent with the circuit court's colloquy with Ms. Spoon's counsel.

Further, even if we were to decide that the waiver of claim bylaw provision is inapplicable or unenforceable and remand to the circuit court as to Condo and Mgmt. Co., Ms. Spoon would still face the defense of lack of constructive notice, after remand, in the circuit court. The circuit court unambiguously decided the notice issue favorably to the defendants Mgmt. Co. and CA and effectively has decided it as to Condo. Ms. Spoon had the opportunity to argue the waiver issue as to those defendants in the circuit court and in the Court of Special Appeals. In this Court, Condo and Mgmt. Co., by a footnote in their brief as petitioners, incorporated by reference the arguments on lack of notice of the petitioner, CA, in its brief to us. Ms. Spoon, as respondent, replied to that argument by CA. There is no difference between CA and the other petitioners in the evidence concerning notice. Consequently, judicial economy is served by now deciding the issue as to Condo and Mgmt. Co.

---

7. Punctuation is, of course, supplied by the court reporter and not dictated by the judge. Punctuated differently from that by the court reporter, the passage of the circuit court's ruling with which we are concerned could read as follows:

"I will grant [Mgmt. Co.'s motion] for the reasons advanced by the management company. Also the defendant [Condo's] motion for summary judgment. As to the waiver issue, I will grant that."

Ms. Spoon contends that Condo and Mgmt. Co. are liable because the creation of the drainage ditch some twenty years ago produced a dangerous condition on CA's land. Maryland appellate decisions involving alleged negligence by one property owner in creating a hazardous condition, due to ice and snow, on the property of another have usually involved owners whose property abutted public sidewalks. The general rule is that the occupant "is under no duty to pedestrians to maintain the public sidewalk abutting his land free from the natural accumulation of snow and ice[.]" *New Highland Recreation, Inc. v. Fries,* 246 Md. 597, 601, 229 A.2d 89, 91 (1967). Further, the abutting owner is not "liable in clearing the public sidewalk of snow and ice, unless through his negligence a new element of danger or hazard, other than one caused by natural forces, is added to the use of the sidewalk by a pedestrian." *Id.* It is Ms. Spoon's position that the added element of danger attributable to Mgmt. Co. and Condo is the ditch.

Just as the liability of the possessor requires actual or constructive notice, liability of the abutting owner requires actual or constructive notice of a hazardous condition which, in the latter case, is created by the combination of ice or snow and the "new element of danger" resulting from the abutting owner's action or inaction. *See Gast, Inc. v. Kitchner,* 247 Md. 677, 685, 234 A.2d 127, 131–32 (1967); *New Highland Recreation,* 246 Md. at 604, 229 A.2d at 93; *Dorsch v. S.S. Kresge Co.,* 245 Md. 697, 699, 226 A.2d 899, 900 (1967); *Stottlemyer v. Groh,* 201 Md. 414, 418–21, 94 A.2d 449, 451–53 (1953).

Having held in Part I that the circuit court correctly granted summary judgment to CA on lack of notice grounds, and there being no difference under the evidence or the law among the three petitioners as to notice as an essential element of Ms. Spoon's claims, we hold that the circuit court did not err in granting summary judgment to Mgmt. Co. and to Condo.

For all of the foregoing reasons, we enter the following mandate.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENTS OF THE CIRCUIT COURT FOR HOWARD COUNTY IN FAVOR OF THE PETITIONERS.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT, MARGARET F. SPOON.